Commonwealth ex rel. Garrett v. Botula

*Byrd R. Brown,* p.p., relator.

*Thomas S. White,* for respondents.

ELLENBOGEN, P. J., January 28, 1965.—This case comes before the court as a complaint in the form of a letter by Lavalle Garrett. Because of the nature of the complaint, we treated it as an application for a writ of habeas corpus and ordered it filed as such.

The conviction of relator on a charge of vagrancy and his commitment to the Allegheny County Workhouse for a term of six months on the record before the magistrate of the City of Pittsburgh, Pa., raises the question of the constitutionality of the Vagrancy Act of May 8, 1876, P. L. 154, 18 PS §2032, as interpreted and applied by the city magistrate.

We hold that certain provisions of section 2 of the Act of 1876, are unconstitutional and the conviction and commitment of Lavalle Garrett in the case before us violated the due process clause of the fourteenth amendment to the Federal Constitution and article 1, sec. 9, of the Constitution of Pennsylvania.

## STATEMENT OF FACTS

Lavalle Garrett, relator, was arrested by police officers of the City of Pittsburgh, on September 18, 1964, at 5:30 a.m., at the corner of Center Avenue and Roberts Street, located within the City of Pittsburgh, without a warrant of arrest. He was charged with larceny of $30 from one Anthony Chariott. In the course of the proceeding, the charge of vagrancy was added.

Garrett was given a hearing before the Hon. Harry B. Fitzgerald, police magistrate of the City of Pittsburgh, on September 18, 1964, the day of his arrest. When the prosecuting witness refused to press the charge of larceny, that charge was dismissed, and the case was then proceeded with on the charge of vagrancy. Mr. Fitzgerald testified at the hearing before us that defendant at the police hearing when ques-

tioned by him "gave no address, no permanent address, no visible means of income".

It is difficult from the evidence which was given at hearing before us to determine exactly what transpired at the hearing before Magistrate Fitzgerald. However, we are certain of the following facts as they relate to Lavalle Garrett:

1. Lavalle Garrett lives in the City of Pittsburgh and has lived in the City of Pittsburgh for many years. He is a permanent resident of the City of Pittsburgh.

2. Garrett is not on relief and had some money on his person when arrested.

3. Garrett has no employment.

4. The charge of larceny was dismissed for lack of evidence and Garrett was adjudged guilty of vagrancy and committed on that charge to the Allegheny County Workhouse for the maximum term of six months permitted by the statute.

## DISCUSSION

Vagrancy is defined in and made punishable by the Act of May 8, 1876, P. L. 154, 18 PS §2032, et seq. The Act of 1876 specifically defines vagrants as follows:

I. Nonresidents who "unlawfully return".

II. All persons who beg or gather alms by "going about from door to door or placing themselves in streets, highways or other roads" for the purpose of begging or gathering alms *and* "who have no fixed place of residence".

III. Persons who come to this Commonwealth from without and who "shall be found loitering or residing therein" and who have "no trade, occupation" or visible means of support.

A fourth provision covering all persons who refuse to perform work allotted to them by the overseers of the poor has since been repealed in effect.

It appears from the foregoing summary of the Act of 1876 that, in order to be a vagrant, defendant must be a nonresident, beggar or loiterer.

None of these essential requirements apply to Lavalle Garrett. Garrett was neither a beggar nor a nonresident.

It appears that Lavalle Garrett was convicted as a vagrant because of the belief of Magistrate Fitzgerald that "he plies the street every night with women's clothes on and wigs, enticing men to come up on the hill for the purpose of looking for prostitutes. He operates as a male prostitute". Such conduct does not constitute vagrancy.

The city has raised the following questions:

1. The fact that relator did not come from without this Commonwealth but is a permanent resident of Pittsburgh and that no evidence was adduced at the hearing before the magistrate that he was a nonresident cannot properly be raised in a proceeding for writ of habeas corpus. The city contends that this would be a review of the sufficiency of the evidence which is improper under Commonwealth ex rel. Jones v. Day, 181 Pa. Superior Ct. 37 (1956), and Thomas v. Myers, 200 Pa. Superior Ct. 452 (1963). In the view of the city, the issue of nonresidency could only be raised on appeal.

2. Although relator was not arrested for vagrancy, the charge of vagrancy may be added by the magistrate.

3. The Act of May 8, 1876, P.L. 154, defining vagrancy, is sufficiently definite as to be constitutional.

4. The magistrate may convict on vagrancy on the basis of "acts known to the magistrate".

5. The fact that Garrett was not informed of his right to counsel and was not permitted to make telephone calls after his arrest and before his hearing does not render the proceeding invalid.

6. The lack of a formal information or complaint charging relator with the offense involved does not affect the validity of the proceeding.

We shall deal with each of these contentions, and in connection therewith shall discuss the facts of this case and the statute and constitutional provisions bearing thereon.

First: The contention of the City of Pittsburgh that the writ of habeas corpus is not a substitute for appeal is, of course, true; but this case goes far beyond a review of the sufficiency of the evidence before the magistrate. It is clear to us beyond any doubt, that there was a total absence of evidence. In other words, there was no evidence whatever under which Lavalle Garrett, relator, could be convicted of vagrancy.

The refusal of the police officers to let him make telephone calls, and an immediate hearing without counsel, and a conviction of relator based not on sworn testimony but on the opinion or "view of the magistrate," is clearly a violation of the basic constitutional rights of petitioner under the Bill of Rights of the Constitution of Pennsylvania and the fourteenth amendment to the Federal Constitution, as will be shown hereafter.

Second: It is, of course, true that a charge of vagrancy may be combined with a charge of larceny, but it is not the law that when a charge of larceny fails, the magistrate may convict of vagrancy. Vagrancy is not a constituent element of larceny and evidence relating to larceny cannot support a conviction for vagrancy. Furthermore, a charge of vagrancy cannot be added in the midst of a hearing. Defendant must be formally charged and advised of the nature of the charge: Commonwealth v. Borden, 61 Pa. 272 (1869).

The hearing of this case has created an impression with us that the hearings on summary convictions before a police magistrate are at times rather loose and informal. Since a hearing on a summary charge may entail a rather substantial prison sentence, such as the sentence of six months in the workhouse which was meted out here, we feel it important to point out that

the Bill of Rights of the Constitution of Pennsylvania and the fourteenth amendment to the Federal Constitution safeguarding the basic rights of every person apply to summary convictions as well as to hearings in a court of record: Fetter v. Wilt, 46 Pa. 457 (1864).

"Fundamental too in the concept of due process, and so in that of liberty, is the thought that condemnation shall be rendered only after trial: Scott v. McNeal, 154 U.S. 34; Blackmer v. United States, 284 U.S. 421. The hearing, moreover, must be a real one, not a sham or a pretense. Moore v. Dempsey, 261 U.S. 86; Mooney v. Holohan, 294 U.S. 103": Palko v. Connecticut, 302 U.S. 319, 327.

The Bill of Rights of the Constitution of Pennsylvania, article I, sec. 9, provides that:

"In all criminal prosecutions the accused hath a right to be heard by himself *and his counsel*, to demand the nature and cause of the accusation against him, *to meet the witnesses face to face*, to have compulsory process for obtaining witnesses in his favor . . .; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by . . . the law of the land." (Italics supplied.)

In the instant case, Garrett was refused after his arrest the right to make a telephone call, obviously for the purpose of notifying his relatives, his friends or his counsel, and of seeking advice and help. This denial is, in itself, a serious violation of article I, sec. 9, of the Constitution of Pennsylvania and of the due process clause of the fourteenth amendment to the Federal Constitution, and renders the subsequent proceeding null and void. Every person arrested, for whatever the offense may be, has an inalienable right to telephone his relatives or friends so that he may notify them of his detention and obtain their help in securing counsel and bail for his release pending a hearing.

Counsel for the city contends that the conviction in this case was proper under section 2 of the Act of 1876.

That section permits a "vagrant", as defined by the Act of 1876: (1) to be arrested on view, and (2) to be convicted and committed by the magistrate "on his own view".

As already stated, there is no support in the record, in the evidence, or in facts, for the proposition that Garrett is a "vagrant" under the Act of 1876. Therefore, his conviction cannot stand.

It is important in the interest of orderly process that we deal with the second contention, that a magistrate may convict on the charge of vagrancy *"on his own view"*. It is true that the Act of May 8, 1876, sec. 2, states that a magistrate may convict and commit "on his own view", and we have no doubt that the magistrate in the instant case thought that he was properly and legally proceeding in doing so. The city law department in the oral argument presented to this court and in the written brief takes the same position.

This provision of the Act of 1876 is clearly unconstitutional as being a violation of article I, sec. 9, of the Constitution of Pennsylvania and of the due process clause of the fourteenth amendment to the Federal Constitution. We want it clearly understood that it is only that clause of the Act of 1876 which we hold to be unconstitutional and not the act itself. This subject deserves careful analysis.

### History of Vagrancy Statutes

Statutes prohibiting vagrancy and making the offense punishable have long been known in England. They have been a part of the laws of Pennsylvania as well as of the laws of many of the States. The Vagrancy Statute of Pennsylvania is a direct descendant of the English acts.

An examination of the English acts shows that they were designed to curb social problems far different from those existing today. As stated in Ledwith v. Roberts, [1936] 3 All. E. R. 570, 594, the early vagrancy

acts in England "came into being under peculiar conditions utterly different to those of the present time". Under the feudal system as it existed prior to the reign of Edward II, 1307 to 1325, when men were largely attached to the soil as serfs, vagrancy was not a problem. Those who were unable to work or refused to work were generally able to obtain their food from the ecclesiastical institutions. As feudalism was breaking up and poverty increasing and the monasteries were confiscated in the reign of Henry VIII (see statute known as 27 Hen. 8, c. 25), the poor, especially those who were able to work but did not want to or who had no opportunity to do so, left their own parishes and went to beg from strangers, who would be more likely to listen to their pleas. Thus, from the time of the Black Death in the middle of the fourteenth century, until the middle of the seventeenth and well into the nineteenth century, it was not unusual to find masterless men on the roads and highways of England who had no means and who had taken to a vagrant life. Many of these formed themselves into the infamous "brotherhoods of beggars".

It was to deal with these two evils, the increasing burden upon the parishes visited by the beggars and vagabonds, and to guard against the notorious organized bands of beggars that the harsh vagrancy laws were enacted. These dual aims can be traced through all of the acts of vagrancy down to our own statute of 1876. Thus the statute of 27 Hen. 8, c. 25, of the year 1535, provided that "A valiant beggar, or sturdy vagabond, shall at the first time be whipped, and sent to the place where he was born or last dwelled . . . and if he continue his roguish life, he shall have the upper part of the gristle of his right ear cut off; and if after that he be taken wandering in idleness, or doth not apply to his labor, or is not in service with any master, he shall be adjudged and executed as a felon."

In 1601, the Act of 43 Eliz. c. 2, the source of all our poor laws, gave the justices of the peace power to commit to the house of correction, "such poor persons as shall not employ themselves to work . . ."

The Act of 17 Geo. 2, c. 5 (1744), provided:

"All persons who, not having wherewith to maintain themselves, live idly . . . and refuse to work for . . . common wages; . . . and . . . all persons going about from door to door, or placing themselves in streets, highways, or passages, to beg or gather alms in the parishes . . . where they dwell, shall be deemed idle and disorderly persons . . . And it shall and may be lawful for any justice of the peace to commit such offenders (being . . . convicted before him, by his own view, or by their own confession, or by the oath of one or more credible witness or witnesses) to the house of correction, there to be kept to hard labor for any time not exceeding one month; and it shall be and may be lawful for any person to apprehend, and carry before a justice of the peace, any such persons going about from door to door, or placing themselves in streets, highways, or passages, to beg or gather alms in the parishes or places where they dwell; and if they shall resist, or escape from the person apprehending them, they shall be subject to the same punishment as rogues and vagabonds are made liable to by this act . . .;

"And be it further enacted by the authority aforesaid, That where any rogues or vagabonds, apprehended by any constable, or such other officer or person as aforesaid, or upon such search as aforesaid, shall be brought before any justice or justices of the peace, it shall and may be lawful for such justice or justices, and he or they are hereby required to inform himself or themselves, by the examination upon oath of the person or persons apprehended, or of any other person, of the condition and circumstances of the person or persons so apprehended, and of the parish or place,

where he, she, or they were last legally settled; the substance of which examination or examinations, shall be put into writing, and be subscribed or signed by the person or persons so examined; and the said justice or justices shall likewise sign the same, and transmit it to the next general or quarter sessions of the peace to be holden for the same county, riding, city, borough, town-corporate, division, or liberty, there to be filed and kept on record; and such justice or justices of the peace, shall and are hereby required to order all such persons so apprehended, to be publickly whipt by the constable, petty constable, or tythingman, or some other person to be appointed by such constable, petty constable, or tythingman, of such parish or place where such persons were apprehended; or to order such persons to be sent to the house of correction, there to remain until the next general or quarter-sessions, or for any less time, as such justice or justices shall think proper; and after such whipping or confinement, such justice or justices may, and are hereby impowered, if they think convenient, by a pass under hand and seal, in the manner and form hereafter directed, to cause such persons to be conveyed to the place of their last legal settlement . . ."

In Pennsylvania we have the Act of February 8, 1766, repealed, 1 Sm. L. XXXIV, entitled "An act for the better employment, relief and support of the poor within the city of Philadelphia, the district of Southwark, the townships of Moyamensing and Passyunk, and the Northern-Liberties", and the general Act of February 21, 1767, P. L. 433, 1 Sm. L. 268, entitled, "An act to prevent the mischiefs arising from the increase of vagabonds, and other idle and disorderly persons, within this province":

"Whereas the number of rogues, vagabonds, and other idle and disorderly persons, daily increases in this province, to the great loss and annoyance of the inhabitants thereof. For remedy whereof, *be it enacted,*

That all persons who shall unlawfully return to such city, township or place from whence they have been legally removed, by order of two justices of the peace, without bringing a certificate from the city, township or place to which they belong; and all persons who, not having wherewith to maintain themselves and their families, live idly and without employment, and refuse to work for the usual and common wages given to other laborers in the like work in the city, township or place where they then are; and all persons going about from door to door, or placing themselves in streets, highways, or other roads, to beg or gather alms in the city, township or place where they dwell, and all other persons wandering abroad and begging; and all persons who shall come from the neighboring colonies, or any of them, into any township or place within this province, and shall be found loitering or residing therein, and shall follow no labor, trade, occupation or business and have no visible means of subsistence, and can give no reasonable account of themselves, or their business in such township or place, shall be deemed, and are hereby declared to be, idle and disorderly persons, and liable to the penalties hereby imposed; and that it shall and may be lawful for any justice of the peace of the county, where such idle or disorderly persons shall be found, to commit such offenders (being thereof legally convicted before him, on his own view, or by the confession of such offenders, or by the oath or affirmation of one or more credible witness or witnesses) to the workhouse of the said county, . . . , there to be kept at hard labor, by the keeper of such workhouse or gaol for any time not exceeding one month."

It is worthy of note that the penalty or commitment is limited to "not exceeding one month".

In 1836, the equivalent of the Act of 43 Elizabeth was passed. It was a resettlement act* and provided for

---

* Resettlement provisions may be of doubtful Constitutional validity: Edwards v. California, 314 U. S. 160 (1941); 104 U. Pa. L. Rev. 603.

the return of those likely to become chargeable to where they were "last settled". It repeated substantially the definition of vagrants found in the Act of 1767. There was no provision for commitment under this act. The penalties under the Acts of 1766 and 1767 were applied. By the Act of February 1, 1866, P. L. 8, provisions were made for the commitment of vagrants in Allegheny County to the workhouse for from 30 days to six months. In the same year, provisions were made for the commitment of vagrants in Erie, Crawford, Venango, Warren and Franklin Counties: P. L. 259, 720. On June 2, 1871, P. L. 1301, a house of correction was established for Philadelphia to which vagrants were committed.

On May 8, 1876, P. L. 154, 18 PS §2032 et seq., the present Vagrant Act was passed. That act reenacted the provisions of the Act of 1836 almost verbatim, except that it omitted the second section that applied to "persons who live idly and without employment, and refuse to work for the usual and common wages . . ." It was held in Commonwealth v. King, 2 Kulp 386, 12 Luzerne 217 (1883), and in the case of County of Cumberland v. Boyd, 113 Pa. 52 (1886), that that section was not repealed by the Act of 1876. However, it was repealed by the Act of June 24, 1937, P. L. 2017, art. 7, sec. 702, 62 PS §2391.

Thus, over a period of more than five centuries the vagrancy acts have developed, more by historical accident and a holding over of archaic language unsuited to present conditions than by any conscious design. As a result, we have today upon the statute books of this Commonwealth a summary conviction statute, to wit the Act of 1876, supra, that is an anomaly even in relation to the requirements of summary convictions. In England, where the vagrancy acts originated, a safeguard was provided by the requirement that *two magistrates* had to join in removing a vagrant:

". . . extensive power of a justice of the peace, which even in the hands of men of honor is highly formidable, will be prostituted to mean and scandalous purposes, to the low ends of selfish ambition, avarice, or personal resentment. And from these ill consequences we may collect the prudent foresight of our ancient lawgivers, who suffered neither the property nor the punishment of the subject to be determined by the opinion of any one of two men.": 4 Blackstone, Commentaries, c. 20.

In Hosegood v. Camps, 53 J. P. 612, Chitty for the appellant contended: "They [the magistrates of the peace] were entitled, on their own view to convict the respondent, and ought to have done so. The Act 5 George 4, c. 3 [the Vagrant Act] says that the justices may convict on their own view, or by the confession of the offender. Here the man was before the justices." To which Hawkins, J., replied:

"How can justices on a mere view of a man, decide a point like this, that he had wilfully refused or neglected to pay, or that he had been offered work and refused it?"

We may ask the same question.

As we have observed earlier in this opinion, the Bill of Rights of the Constitution of Pennsylvania and the due process provision of the fourteenth amendment to the Federal Constitution apply to proceedings in summary conviction. It is well to keep in mind what Justice Thompson said in Brown v. Hummel, 6 Pa. 86, 96 (1847),

"But we also represent the people; we represent their justice, their constitution, and their laws. The constitution is the emanation and emblem of their high sovereignty. Written constitutions are the guarantees of the liberty and security of the people, and are the supreme law. To establish them, or rather to establish the right to make them, the best blood of our fathers was spilled upon the soil of the country in many a field

of battle. We are bound, by every duty, to maintain inviolate the constitution of Pennsylvania, and will do it according to our best judgment. All men are liable to err, and the law-making power, with the best motives which the purest hearts furnish, may err . . . Here is the ark of his safety, and the goal of his peace; and when the humblest citizen comes into this court with the constitution of his country in his hand, we dare not disregard the appeal."

A magistrate who convicts *"on his own view"* acts not only as judge, but also as a witness before himself. Moreover, he is a witness who need not testify and cannot be crossexamined. Defendant does not know what these "views" are. They need not be uttered. Their substance and their source remain a mystery to defendant. The whole concept of a conviction "on his own view" by the magistrate is contrary to every basic principle of justice and nullifies guiding principles of the Bill of Rights of Pennsylvania and of the Constitution of the United States.

It is clear to us that the provisions of section 2 of the Act of May 8, 1876, P. L. 154, the present vagrancy statute, which permits conviction by the magistrate *"on his own view,"* is unconstitutional and, therefore, void, as being in violation of article 10, sec. 9, of the Pennsylvania Constitution and the due process clause of the fourteenth amendment to the Constitution of the United States of America.

Relator, Lavalle Garrett, will be ordered discharged forthwith.

### ORDER

And now, January 28, 1965, after hearing and argument and upon consideration thereof, Lavalle Garrett, relator in the within case, is ordered discharged from the Allegheny County Workhouse.

Eo die, exception noted to respondents and bill sealed.