## BLACKMER *v.* UNITED STATES.

Nos. 200 and 201. Argued January 5, 6, 1932.—Decided February 15, 1932.

424

*Messrs. George Gordon Battle* and *Karl C. Schuyler,* with whom *Messrs. Eugene D. Millikin, Frederick DeC. Faust,* and *Charles F. Wilson* were on the brief, for petitioner.

*Mr. Atleè Pomerene,* with whom *Messrs. Leo A. Rover,*
United States Attorney for the District of Columbia, and
*Frank Harrison* were on the brief, for the United States.

430

432

Mr. Chief Justice Hughes delivered the opinion of the Court.

The petitioner, Harry M. Blackmer, a citizen of the United States resident in Paris, France, was adjudged guilty of contempt of the Supreme Court of the District of Columbia for failure to respond to subpœnas served upon him in France and requiring him to appear as a witness on behalf of the United States at a criminal trial in that court. Two subpœnas were issued, for appearances at different times, and there was a separate proceeding with respect to each. The two cases were heard together, and a fine of $30,000 with costs was imposed in each case, to be satisfied out of the property of the petitioner which had been seized by order of the court. The decrees were affirmed by the Court of Appeals of the District, 49 F. (2d) 523, and this Court granted writs of certiorari.

The subpœnas were issued and served, and the proceedings to punish for contempt were taken, under the provisions of the Act of July 3, 1926, c. 762, 44 Stat. 835, U. S. C., Tit. 28, §§ 711–718.[1] The statute provides that

---

[1] The Act is as follows: *"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That whenever letters rogatory shall issue out of any court of the United States, either with or without interrogatories addressed to any court of any foreign country, to take the testimony of any witness, being a citizen of the United States or domiciled therein, and such witness, having been personally notified by it according to the practice of such court, to appear and testify pursuant to such letters rogatory and such witness shall neglect to appear, or having appeared shall decline, refuse, or neglect to answer to any question which may be propounded to him by or under the authority of such court, to which he would be required to make answer were he being examined before

whenever the attendance at the trial of a criminal action of a witness abroad, who is " a citizen of the United States or domiciled therein," is desired by the Attorney General, or any assistant or district attorney acting under him, the judge of the court in which the action is pending may order a subpœna to issue, to be addressed to a consul of the United States and to be served by him personally

---

the court issuing such letters, the court out of which said letters issued may upon proper showing order that a subpœna issue addressed to any consul of the United States within any country in which such witness may be, commanding such witness to appear before the said court at a time and place therein designated.

" Sec. 2. Whenever the attendance at the trial of any criminal action of a witness, being a citizen of the United States or domiciled therein, who is beyond the jurisdiction of the United States, is desired by the Attorney General or any assistant or district attorney acting under him, the judge of the court before which such action is pending, or who is to sit in the trial of the same, may, upon proper showing, order that a subpœna issue, addressed to any consul of the United States within any country in which such witness may be, commanding such witness to appear before the said court at a time and place therein designated.

" Sec. 3. It shall be the duty of any consul of the United States within any country in which such witness may be at the request of the clerk of the court issuing any subpœna under this Act or at the request of the officer causing such subpœna to be issued, to serve the same personally upon such witness and also to serve any orders to show cause, rules, judgments, or decrees when requested by the court or United States marshal, and to make a return thereof to the court out of which the same issued, first tendering to the witness the amount of his necessary expenses in traveling to and from the place at which the court sits and his attendance thereon, which amount shall be determined by the judge on issuing the order for the subpœna and supplied to the consul making the service.

" Sec. 4. If the witness so served shall neglect or refuse to appear as in such subpœna directed, the court out of which it was issued shall, upon proof being made of the service and default, issue an order directing the witness to appear before the court at a time in such order designated to show cause why he should not be adjudged guilty of contempt and be punished accordingly.

upon the witness with a tender of travelling expenses. §§ 2, 3. Upon proof of such service and of the failure of the witness to appear, the court may make an order requiring the witness to show cause why he should not be punished for contempt, and upon the issue of such an order the court may direct that property belonging to the witness and within the United States may be seized and held to satisfy any judgment which may be rendered

"Sec. 5. Upon issuing such order the court may, upon the giving of security for any damages which the recusing witness may have suffered, should the charge be dismissed (except that no security shall be required of the United States), direct as a part of such order that the property of the recusing witness, at any place within the United States, or so much thereof in value as the court may direct shall be levied upon and seized by the marshal of said court in the manner provided by law or the rule of the court for a levy or seizure under execution, to be held to satisfy any judgment that may be rendered against such witness in the proceeding so instituted.

"Sec. 6. The marshal, having made such levy, shall thereupon forward to the consul of any country where the recusing witness may be a copy of the order to show cause why such witness should not be adjudged guilty of contempt with the request that said consul make service of the same personally upon the recusing witness, and shall cause to be published such order to show cause and for the sequestration of the property of such witness, in some newspaper of general circulation in the district within which the court issuing such order sits, once each week for six consecutive weeks.

"Sec. 7. On the return day of such order or any later day to which the hearing may by the court be continued, proof shall be taken; and if the charge of recusancy against the witness shall be sustained, the court shall adjudge him guilty of contempt and, notwithstanding any limitation upon the power of the court generally to punish for contempt, impose upon him a fine not exceeding $100,000 and direct that the amount thereof, with the costs of the proceeding, be satisfied, unless paid, by a sale of the property of the witness so seized or levied upon, such sale to be conducted upon the notice required and in the manner provided for sales upon execution.

"Sec. 8. Any judgment rendered pursuant to this Act upon service by publication only may be opened for answer within the time and in the manner provided in section 57 of the Judicial Code."

against him in the proceeding.  §§ 4, 5.  Provision is made for personal service of the order upon the witness and also for its publication in a newspaper of general circulation in the district where the court is sitting.  § 6.  If, upon the hearing, the charge is sustained, the court may adjudge the witness guilty of contempt and impose upon him a fine not exceeding $100,000, to be satisfied by a sale of the property seized.  § 7.  This statute and the proceedings against the petitioner are assailed as being repugnant to the Constitution of the United States.

*First.* The principal objections to the statute are that it violates the due process clause of the Fifth Amendment.  These contentions are (1) that the " Congress has no power to authorize United States consuls to serve process except as permitted by treaty "; (2) that the Act does not provide " a valid method of acquiring judicial jurisdiction to render personal judgment against defendant and judgment against his property "; (3) that the Act " does not require actual or any other notice to defendant of the offense or of the Government's claim against his property "; (4) that the provisions " for hearing and judgment in the entire absence of the accused and without his consent " are invalid; and (5) that the Act is " arbitrary, capricious and unreasonable."

While it appears that the petitioner removed his residence to France in the year 1924, it is undisputed that he was, and continued to be, a citizen of the United States.  He continued to owe allegiance to the United States.  By virtue of the obligations of citizenship, the United States retained its authority over him, and he was bound by its laws made applicable to him in a foreign country.  Thus, although resident abroad, the petitioner remained subject to the taxing power of the United States.  *Cook* v. *Tait,* 265 U. S. 47, 54, 56.  For disobedience to its laws through conduct abroad he was subject to punishment in the courts of the United States.  *United States* v. *Bow-*

*man,* 260 U. S. 94, 102. With respect to such an exercise of authority, there is no question of international law,[2] but solely of the purport of the municipal law which establishes the duties of the citizen in relation to his own government.[3] While the legislation of the Congress, unless the contrary intent appears, is construed to apply only within the territorial jurisdiction of the United States, the question of its application, so far as citizens of the United States in foreign countries are concerned, is one of construction, not of legislative power. *American Banana Co.* v. *United Fruit Co.,* 213 U. S. 347, 357; *United States* v. *Bowman, supra; Robertson* v. *Labor Board,* 268 U. S. 619, 622. Nor can it be doubted that the United States possesses the power inherent in sovereignty to require the return to this country of a citizen, resident elsewhere, whenever the public interest requires it, and to penalize him in case of refusal. Compare *Bartue and the Duchess of Suffolk's Case,* 2 Dyer's Rep. 176b, 73 Eng. Rep. 388; *Knowles* v. *Luce,* Moore 109, 72 Eng. Rep. 473.[4] What in England was the prerogative of the sov-

---

[2] " The law of Nations does not prevent a State from exercising jurisdiction over its subjects travelling or residing abroad, since they remain under its personal supremacy." Oppenheim, International Law, 4th ed., vol. I, § 145, p. 281; Story, Conflict of Laws, 8th ed., § 540, p. 755; Moore's International Law Digest, vol. II, pp. 255, 256; Hyde, International Law, vol. I, § 240, p. 424; Borchard, Diplomatic Protection of Citizens Abroad, § 13, pp. 21, 22.

[3] Compare *The Nereide,* 9 Cranch 388, 422, 423; *Rose* v. *Himely,* 4 Cranch 241, 279; *The Apollon,* 9 Wheat. 362, 370; *Schibsby* v. *Westenholz,* L. R. 6 Q. B. 155, 161. Illustrations of acts of the Congress applicable to citizens abroad are the provisions found in the chapter of the Criminal Code relating to " Offenses against Operations of Government "(U. S. C., Tit. 18, c. 4; *United States* v. *Bowman,* 260 U. S. 94, 98–102) and the provisions relating to criminal correspondence with foreign governments, Act of January 30, 1799, 1 Stat. 613, U. S. C., Tit. 18, § 5.

[4] See, also, Hyde, *op. cit.,* vol. 1, § 381, pp. 668, 669.

ereign in this respect, pertains under our constitutional system to the national authority which may be exercised by the Congress by virtue of the legislative power to prescribe the duties of the citizens of the United States. It is also beyond controversy that one of the duties which the citizen owes to his government is to support the administration of justice by attending its courts and giving his testimony whenever he is properly summoned. *Blair* v. *United States,* 250 U. S. 273, 281. And the Congress may provide for the performance of this duty and prescribe penalties for disobedience.

In the present instance, the question concerns only the method of enforcing the obligation.[5] The jurisdiction of the United States over its absent citizen, so far as the binding effect of its legislation is concerned, is a jurisdiction *in personam,* as he is personally bound to take notice of the laws that are applicable to him and to obey them. *United States* v. *Bowman, supra.* But, for the exercise of judicial jurisdiction *in personam,* there must be due process, which requires appropriate notice of the judicial action and an opportunity to be heard. For this notice and opportunity the statute provides. The authority to require the absent citizen to return and testify necessarily implies the authority to give him notice of the requirement. As his attendance is needed in court, it is appropriate that the Congress should authorize the court to direct the notice to be given and that it should be in the customary form of a subpœna. Obviously, the requirement would be nugatory, if provision could not be made for its communication to the witness in the foreign coun-

---

[5] The instant case does not present the questions which arise in cases where obligations inherent in allegiance are not involved. See *Pennoyer* v. *Neff,* 95 U. S. 714; *Galpin* v. *Page,* 18 Wall. 350, 369; *Harkness* v. *Hyde,* 98 U. S. 476, 478; *Riverside & Dan River Cotton Mills* v. *Menefee,* 237 U. S. 189, 193; *McDonald* v. *Mabee,* 243 U. S. 90, 92; *Wuchter* v. *Pizzutti,* 276 U. S. 13.

try. The efficacy of an attempt to provide constructive service in this country would rest upon the presumption that the notice would be given in a manner calculated to reach the witness abroad. *McDonald* v. *Mabee*, 243 U. S. 90, 92. The question of the validity of the provision for actual service of the subpœna in a foreign country is one that arises solely between the Government of the United States and the citizen. The mere giving of such a notice to the citizen in the foreign country of the requirement of his government that he shall return is in no sense an invasion of any right of the foreign government; and the citizen has no standing to invoke any such supposed right. While consular privileges in foreign countries are the appropriate subjects of treaties,[6] it does not follow that every act of a consul, as, *e. g.*, in communicating with citizens of his own country, must be predicated upon a specific provision of a treaty. The intercourse of friendly nations, permitting travel and residence of the citizens of each in the territory of the other, presupposes and facilitates such communications. In selecting the consul for the service of the subpœna, the Congress merely prescribed a method deemed to assure the desired result but in no sense essential. The consul was not directed to perform any function involving consular privileges or depending upon any treaty relating to them, but simply to act as any designated person might act for the Government in conveying to the citizen the actual notice of the requirement of his attendance. The point raised by the petitioner with respect to the provision for the service of the subpœna abroad is without merit.

As the Congress could define the obligation, it could prescribe a penalty to enforce it. And as the default lay in disobedience to an authorized direction of the court, it

[6] Cf. *Dainese* v. *Hale*, 91 U. S. 13, 15, 16; *In re Ross*, 140 U. S. 453, 462, 463. See, also, U. S. C., Tit. 22, §§ 71 *et seq.*; Hyde, *op. cit.*, § 488, pp. 828–832.

constituted a contempt of court and the Congress could provide for procedure appropriate in contempt cases. The provision of the statute for punishment for contempt is applicable only " upon proof being made of the service and default." § 4. That proof affords a proper basis for the proceeding, and provision is made for personal service upon the witness of the order to show cause why he should not be adjudged guilty. For the same reasons as those which sustain the service of the subpœna abroad, it was competent to provide for the service of the order in like manner. It is only after a hearing pursuant to the order to show cause, and upon proof sustaining the charge, that the court can impose the penalty. The petitioner urges that the statute does not require notice of the offense, but the order to show cause is to be issued after the witness has failed to obey the subpœna demanding his attendance and the order is to be made by the court before which he was required to appear. This is sufficient to apprise the witness of the nature of the proceeding and he has full opportunity to be heard. The further contention is made that, as the offense is a criminal one, it is a violation of due process to hold the hearing, and to proceed to judgment, in the absence of the defendant. The argument misconstrues the nature of the proceeding. " While contempt may be an offense against the law and subject to appropriate punishment, certain it is that since the foundation of our government proceedings to punish such offenses have been regarded as *sui generis* and not ' criminal prosecutions ' within the Sixth Amendment or common understanding." *Myers* v. *United States,* 264 U. S. 95, 104, 105. See, also, *Bessette* v. *Conkey Co.,* 194 U. S. 324, 336, 337; *Michaelson* v. *United States,* 266 U. S. 42, 65, 66; *Ex parte Grossman,* 267 U. S. 87, 117, 118. The requirement of due process in such a case is satisfied by suitable notice and adequate opportunity to appear and to be heard. Cf. *Cooke* v. *United States,* 267 U. S. 517, 537.

The authorization of the seizure of the property belonging to the defaulting witness and within the United States, upon the issue of the order to show cause why he should not be punished for contempt (§ 5), affords a provisional remedy, the propriety of which rests upon the validity of the contempt proceeding. As the witness is liable to punishment by fine if, upon the hearing, he is found guilty of contempt, no reason appears why his property may not be seized to provide security for the payment of the penalty. The proceeding conforms to familiar practice where absence or other circumstance makes a provisional remedy appropriate. See *Cooper* v. *Reynolds*, 10 Wall. 308, 318. The order that is to be served upon the witness contains the direction for the seizure. The property is to be held pending the hearing and is to be applied to the satisfaction of the fine if imposed and unless it is paid. Given the obligation of the witness to respond to the subpœna, the showing of his default after service, and the validity of the provision for a fine in case default is not excused, there is no basis for objection to the seizure upon constitutional grounds. The argument that the statute creates an unreasonable classification is untenable. The disobedience of the defaulting witness to a lawful requirement of the court, and not the fact that he owns property, is the ground of his liability. He is not the subject of unconstitutional discrimination simply because he has property which may be appropriated to the satisfaction of a lawful claim.

*Second.* What has already been said also disposes of the contention that the statute provides for an unreasonable search and seizure in violation of the Fourth Amendment. It authorizes a levy upon property of the witness at any place within the United States in the manner provided by law or rule of court for levy or seizure under execution. A levy in such a manner, either provisionally

or finally, to satisfy the liability of the owner is not within the constitutional prohibition.

The petitioner raises the further and distinct point that the statute limits the availability of the subpœna to the Government, and that " by excluding defendants in criminal prosecutions" from the right to such a subpœna it violates the provision of the Sixth Amendment that the accused shall have " compulsory process for obtaining witnesses in his favor." We need not consider whether the statute requires the construction for which the petitioner contends, as in any event the petitioner, a recalcitrant witness, is not entitled to raise the question. *Nelson* v. *United States*, 201 U. S. 92, 115; *Southern Railway Co.* v. *King*, 217 U. S. 524, 534; *Jeffrey Manufacturing Co.* v. *Blagg*, 235 U. S. 571, 576; *Blair* v. *United States, supra,* at p. 282.

*Third.* The statute being valid, the question remains as to the procedure in its application against the petitioner. He insists that the showing for the issue of the subpœnas requiring him to attend was inadequate. But the " proper showing " required was for the purpose of satisfying the court that the subpœna should issue. The petitions, in the instant cases, were presented to the judge of the court by the official representatives of the Government and their statement as to the materiality and importance of the testimony expected from the witness was unquestionably sufficient to give the court jurisdiction to issue the subpœnas, and, unless they were vacated upon proper application, the petitioner was bound to obey. Nor was it necessary that the subpœnas should "identify" themselves with the statute under which they were issued. The petitioner as a citizen of the United States was chargeable with knowledge of the law under which his attendance as a witness could be required. It was sufficient that the subpœnas required his attendance to testify on behalf of the United States at the time and place stated.

Equally unavailing is the objection that after the petitioner had refused to appear in response to the subpœnas, the orders to show cause why he should not be punished for contempt did not specify the offense. As the statute prescribed, he had been served with the subpœnas, and had defaulted, and he had also been served with the order which directed him to show cause why he should not be adjudged guilty of contempt and provided for the seizure of his property to be held to satisfy any judgment that might be rendered against him in the proceeding. The notice which he thus received was sufficient to inform him of the character of the charge against him and of the hearing at which he would have opportunity to present his defense. The petitioner also insists that the seizure which was made in case No. 200 was abandoned by virtue of the seizure of the same property under the order issued in No. 201. But the second levy was not antagonistic to the first. The proceedings were consistent.

In No. 201, the contention is made that the petitioner was subpœnaed to attend on April 2, 1928, and that the case in which his testimony was desired was not tried until April 9, 1928. There is no suggestion that the petitioner appeared on April 2, 1928, in compliance with the subpœna, and the record shows that the case in which he was subpœnaed was continued by the court until the later date. The subpœna contained the usual provision that the witness was " not to depart the court without leave of the court or district attorney." Cf. Rev. Stat., § 877; U. S. C., Tit. 28, § 655. It was the duty of the petitioner to respond to the subpœna and to remain in attendance until excused by the court or by the Government's representatives.

*Decrees affirmed.*

Mr. Justice Roberts took no part in the consideration and decision of this case.