**In re Motion for Peter J. CAMIEL for a Continuance to Appear as a Witness before the Federal Grand Jury.**

**Misc. No. 75–121.**

United States District Court,
E. D. Pennsylvania.
April 29, 1975.

A. Richard Gerber, Norristown, Pa., for plaintiff.

Richard R. Galli, Asst. U. S. Atty., Philadelphia, Pa., for Government.

## OPINION AND ORDER

FOGEL, District Judge.

This matter comes before the Court on the motion of Peter J. Camiel to postpone his scheduled appearance before a Grand Jury in the Eastern District of Pennsylvania. On the basis of the pleadings and memoranda of the parties, the affidavit of Richard Galli, Esquire, and the testimony of Mr. Camiel, we make the following Findings of Fact and Conclusions of Law:

## I. FINDINGS OF FACT

1. A Grand Jury empaneled in the Eastern District of Pennsylvania on February 6, 1975, is currently conducting an investigation into possible violations of federal criminal statutes in connection with the award of municipal contracts in the City of Philadelphia, including, specifically, violations of Sections 371, 1951, and 1952 of Title 18 of the United States Code.

2. On or about February 12, 1975, Special Agent Klaus Rohr, of the Federal Bureau of Investigation, visited petitioner Peter J. Camiel at the headquarters of the Philadelphia Democratic City Committee. At that time, Mr. Camiel was notified that his testimony before the Grand Jury would be required.

3. On or about February 24–25, 1975, Mr. Camiel was furnished with 77 written questions outlining the specific areas of inquiry in connection with the Grand Jury investigation as they related to the matters which would be the subject of the questions to be put to Mr. Camiel.

4. On April 3, 1975, Richard R. Galli, Esq., the Assistant United States Attorney in charge of the Grand Jury investigation, met with A. Richard Gerber, Esq., counsel for Mr. Camiel throughout this entire period, for the purpose of discussing Mr. Camiel's appearance before the Grand Jury and for the additional purpose of discussing the scope of the questions. At that meeting, Mr. Gerber informed Mr. Galli for the first

time that it would be onerous for Mr. Camiel to testify before May 20, 1975, the scheduled date of the primary election in Philadelphia.

5. On April 17, 1975, Mr. Galli telephoned the office of Mr. Gerber, who was not available; Mr. Galli then informed an employee of Mr. Gerber's office that Mr. Camiel's testimony would be required on April 24, 1975, at 1:30 P.M. Mr. Gerber was then in the City of Pittsburgh, Pennsylvania, and was informed by his office that an imminent Grand Jury appearance had been scheduled. However, he did not learn the precise time and date from his office personnel during that telephone call, notwithstanding the fact that the time of 1:30 P.M. on April 24, 1975, as the time of appearance, had been communicated to his office personnel.

6. On April 21, 1975, Mr. Galli spoke to Mr. Gerber with respect to the scheduled Grand Jury appearance.

7. Prior to April 21, 1975, Mr. Galli had not authorized the issuance of a subpoena to Mr. Camiel because of his understanding that Mr. Camiel would appear voluntarily and that the issuance of a subpoena was unnecessary.

8. On April 21, 1975, Mr. Galli authorized the issuance of a subpoena directing Mr. Camiel to appear before the Grand Jury on April 24, 1975, at 1:30 P.M.

9. On April 23, 1975, Mr. Gerber filed a motion in the instant matter to postpone Mr. Camiel's appearance before the Grand Jury until June 1, 1975, on the ground that Mr. Camiel could not adequately prepare for such an appearance prior to the primary election scheduled to be held on May 20, 1975.

10. On April 24, 1975, at 10:00 A.M., we held a hearing in open court upon Mr. Gerber's motion. At that hearing, we considered the documents filed by the parties, including the affidavit of Mr. Galli, and took the testimony of Mr. Camiel.

11. Mr. Camiel is Chairman of the Philadelphia Democratic City Committee. His responsibilities require him to attend to the affairs of that office on a year-round basis, but there are peak periods which generally occur during the weeks immediately preceding primary and general elections. During the present 1975 primary election campaign, Mr. Camiel has been required to work long hours, including week-ends.

12. Mr. Camiel testified that beginning in May of 1974, prior to the election by the Democratic City Committee of officers for the ensuing year, which election took place at the Bellevue Stratford Hotel, he and his associates and family members were subjected to threats from unknown persons. Mr. Camiel further testified that these threats subsided after the City Committee election, and began again in January of 1975, in the weeks immediately preceding the primary election scheduled for May 20, 1975. Mr. Camiel further testified that his daughter has been threatened, and that his wife and daughter have been under the protection of the Pennsylvania State Police for a period of about one month. In support of his testimony, Mr. Camiel has submitted as exhibits to the "Memorandum of Law in Support of Motion for Postponement of Appearance * * *" letters or statements from the following persons:

(a) Marilyn A. Young
(b) John Bonner
(c) Nina Camiel
(d) Sue Scarcelli
(e) Edythe Greenfield
(f) Pat Marcovecchio
(g) Ann Lynch
(h) John Vendy
(i) Karen Mink
(j) Venita Nagel
(k) Dorothy D. Hankins

Each of these letters or statements describes alleged harassment or threats in recent weeks in connection with the primary campaign.

13. There is no evidence that any of these alleged threats or alleged harassing conduct are related in any way to Mr. Camiel's scheduled Grand Jury appearance.

14. Prior to January 19, 1975, Mr. Camiel suffered from headaches and pains in the back of his head. His blood pressure reached 210/110, and as a result of this development he was hospitalized from January 19th to January 23, 1975.

15. Notwithstanding the alleged threats, and the hospitalization of Mr. Camiel in January of 1975, he is fully performing his duties as Chairman of the Denfocratic City Committee, and is discharging his responsibilities in connection with the 1975 primary campaign. He is in complete possession of all of his mental faculties and testified in a manner which demonstrated astuteness and vigor in all respects.

16. The United States Attorney has represented to the Court that the testimony of Mr. Camiel is essential at this time to the work of the Grand Jury, and that further delay may be prejudicial to the work of that body. The United States Attorney has also represented that Mr. Camiel's testimony should not be lengthy, and could be completed in several hours.

17. Mr. Gerber has stated to the Court that his preparation with Mr. Camiel prior to a Grand Jury appearance would take two days at most, in the absence of any unforeseen circumstances.

18. There is not a scintilla of evidence in this record that the Grand Jury investigation or the timing of Mr. Camiel's scheduled appearance are in any way motivated by an effort to harass or politically embarrass Mr. Camiel, or any other person. To the contrary, the evidence unequivocally demonstrates that notice of the necessity for his appearance was furnished to him or on about February 12, 1975, and that the United States Attorney's office went through the painstaking procedure, (not a usual one), of supplying the specific questions to Mr. Camiel and his counsel, Mr. Gerber, on or about February 25, 1975.

## II. DISCUSSION

The Court is certainly aware of, and sympathetic with the pressures that Mr. Camiel is under as the Chairman of the Democratic City Committee of Philadelphia, and is also aware of the fact that he is currently engaged in a vigorously contested primary campaign within his own party in connection with the 1975 Mayoral election. The Court also understands, and again has great empathy with his concern for the safety of his wife and daughter and of various political colleagues who may, from time to time, receive anonymous calls and threats. It is clear, however, that Mr. Camiel is in full charge of the operation of the Democratic City Committee, notwithstanding these pressures and anxieties, and, indeed, is carrying out his functions with vigor and with dedication. His hours, which he estimates to range from 10:00 A.M. until late into the night, virtually on a daily basis, are not only proof of his capacity for arduous work under strenuous circumstances, but of his command of his faculties in all respects.

Had the first notice of the necessity of his appearance before the Grand Jury come by way of a subpoena served on April 21, 1975, demanding such appearance on April 24, 1975, then we would have a factual situation before us which sharply differs from the admitted facts in this matter. It is uncontested that on February 12, 1975, Agent Klaus Rohr of the FBI visited Mr. Camiel at his office at the Philadelphia Democratic City Committee, and informed him that his testimony would be required. Indeed, the United States Attorney's office accommodated Mr. Camiel by setting forth in a letter signed by Mr. Galli, (the Assistant United States Attorney in charge of this Grand Jury investigation which deals with the award of Philadelphia

municipal contracts), 77 specific questions which would be asked of him when he appeared, thus giving him the opportunity to review these matters with counsel before his appearance, and, indeed, with anyone else he may have chosen to consult. This submission of February 25, 1975, was clearly an accommodation to a prospective witness before the Federal Grand Jury. Moreover, it is also undisputed that a subpoena was not issued at that time because of the repeated assurances of Mr. Gerber that Mr. Camiel would appear voluntarily. It was not until April 3, 1975, that the United States Attorney's office first became aware of the fact that Mr. Camiel would not voluntarily appear until sometime after May 20, 1975. Only after that information was relayed to the office of the United States Attorney did a subpoena issue on April 21, 1975.

■ The United States Attorney has made the uncontroverted assertion at the hearing before us that the work of the Grand Jury may be hampered or hindered if Mr. Camiel gives his testimony after May 20, 1975. While it would be wholly improper to inquire into the specifics of the Grand Jury investigation with respect to named individuals, we do, however, accept this assertion in the absence of any evidence to demonstrate that the Grand Jury investigation is pursued in bad faith or is motivated by a desire to harass Mr. Camiel or any other person. *See* In re Grand Jury Proceedings, *infra*, 486 F.2d at 91.

■ We must weigh the competing and conflicting interests. Mr. Camiel is obviously a very busy man, a major figure in the Philadelphia political system. We are not unmindful of the demands upon his time. By the same token, his duties as a citizen cannot be ignored because of his occupation. The very fact that the appearance was first requested in February and that he has had in his possession for almost two months the specific questions he would be asked, demonstrates that the office of the United States Attorney not only has not acted cavalierly, but to the contrary, has shown courtesy as well as fairness to Mr. Camiel and his attorney.

Indeed, his attorney's statement, in which Mr. Camiel acquiesces, that only two days would be required for preparation, again demonstrates that this would not be a process which would divert him from his occupation for a lengthy period. Moreover, it is significant in this regard to note that ordinarily a witness called before a Grand Jury is not given the opportunity to prepare ahead of time by having the specific list of the questions to be asked given to him, and that this privilege, which was extended to Mr. Camiel, is a two-fold benefit. *First*: it gave him the prior opportunity to consult with his lawyer and others with respect to the specific subject matter, and, *Second*: it would tend to expedite any actual inquiry before the Grand Jury itself, because of his familiarity in advance with the subject matter of that inquiry.

■ Weighing the various competing interests under all the facts and circumstances, we believe the work of the Grand Jury must not be impeded. Moreover, the assertion by Mr. Curran that the appearance itself clearly would last less than a day, and perhaps no more than a few hours, together with the assertion of Mr. Camiel's attorney, Mr. Gerber, that preparation time would not take more than two days, buttress the conclusion that this relatively brief amount of time, although inconvenient to Mr. Camiel, is not prejudicial.

Indeed, if this comes at a time that is less convenient for him than it would have been in February or March, the responsibility for the delay does not rest with the government. The very fact that on or about February 25, 1975, he had the specifics and chose not to go forward at that time has created whatever dilemma he may have at this time. We believe that the possible prejudice

which could result to the government outweighs any inconvenience Mr. Camiel may suffer. Accordingly, we make the following Conclusions of Law and will enter the ensuing Order.

## III. CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties in the instant proceedings.

■ 2. This Court has jurisdiction over the subject matter in the instant proceedings, pursuant to the general supervisory power exercised by the United States District Court over proper use of process which issues from Grand Juries empaneled within the District. In re Grand Jury Proceedings (Jacqueline Schofield), 486 F.2d 85, 89 (3d Cir. 1973); *see* 28 U.S.C. § 1826 (enforcement proceedings).

■ 3. "Although the powers of the grand jury are not unlimited and are subject to the supervision of a judge, the longstanding principle that 'the public . . . has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege, United States v. Bryan, 339 U.S. 323, at 331, 70 S.Ct. 724, at 730, 94 L.Ed. 884, at 891; Blackmer v. United States, 284 U.S. 421, 438, 52 S.Ct. 252, 255, 76 L.Ed. 375, 383 (1932); 8 J. Wigmore, Evidence § 2192 (McNaughton rev. 1961), is particularly applicable to grand jury proceedings." Branzburg v. Hayes, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972) (footnote omitted).

■ 4. " 'The personal sacrifice involved [in an appearance before the Grand Jury] is a part of the necessary contribution of the individual to the welfare of the public.' * * * And while the duty may be 'onerous' at times, it is 'necessary to the administration of jus-tice.' " United States v. Dionisio, 410 U.S. 1, 10, 93 S.Ct. 764, 769, 35 L.Ed.2d 67 (1973), citing Blair v. United States, 250 U.S. 273, 281, 39 S.Ct. 468, 63 L.Ed. 979 (1919).

■ 5. "The duty to testify [before a Grand Jury] may on occasion be burdensome or even embarrassing. It may cause injury to a witness' social and economic status. Yet the duty to testify has been regarded as 'so necessary to the administration of justice' that the witness' personal interest in privacy must yield to the public's overriding interest in full disclosure." United States v. Calandra, 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974).

6. Under the facts of the instant case, the public duty of a citizen to testify before a Grand Jury when duly subponaed outweighs the burden upon Mr. Camiel caused by his activity as Chairman of the Democratic City Committee, or his concern or anxiety produced by alleged harassment related to the current political campaign.

Because of the pendency of these proceedings, however, we will defer Mr. Camiel's appearance to a time to be set by the United States Attorney's office on or after May 5, 1975; this delay of five days will afford Mr. Camiel adequate opportunity to consult with his counsel in connection with his preparation for his Grand Jury appearance, particularly in light of his counsel's statement that two days preparation is all that is required. Any request for a postponement of this appearance beyond May 5, 1975, will be denied, unless the United States Attorney agrees to such postponement, or unless exigent circumstances develop, not heretofore brought to our attention, which would warrant an additional postponement of Mr. Camiel's appearance.