**In re Grand Jury Proceedings
Witness MS. X.**

**No. CR–83–89 MISC (RPA).**

United States District Court,
N.D. California.

May 4, 1983.

Michael Howard, Asst. U.S. Atty., San Francisco, Cal., for plaintiff.

Frank McCabe, Goorjian & McCabe, San Francisco, Cal., for defendant.

## ORDER UNDER SEAL

AGUILAR, District Judge.

Ms. X———— has moved this Court to quash a subpoena issued by the grand jury. The Court heard argument on Ms. X————'s motion on April 21, 1983. After hearing oral argument, the Court requested that the parties further brief the question of whether Ms. X———— can claim a marital privilege when called to testify before the grand jury about the activities of Mr. Y————. Having received the further briefs and declarations of the parties, and having carefully considered the arguments, the Court issues the following order.

Ms. X———— seeks to have the Court quash the subpoena on the ground that if called to testify she will invoke a marital privilege. Although Ms. X———— admits that she is not formally married to Mr. Y————, she does claim that she and Mr. Y———— have lived as husband and wife for six and one-half years and that she has held herself out as Mrs. Y————. In addition, Ms. X———— avers that she and Mr. Y———— have four children (two that they had together and two from previous relationships), and that all of them live togeth-

er as a family. Based on this and other evidence, Ms. X_____ contends that she is entitled to invoke the marital privilege even though she and Mr. Y_____ have never been legally married.

Ms. X_____'s motion to quash the grand jury subpoena raises questions of law that are bound to recur with increasing frequency in a variety of contexts. While the Court believes that in some instances it might be appropriate to allow a person in Ms. X_____'s position to invoke the marital privilege, the Court finds that such a result is not warranted by the circumstances presented in this case.

In *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the Supreme Court stated that "the grand jury's authority to subpoena witnesses is not only historic ... but essential to its task. Although the powers of the grand jury are not unlimited and are subject to the supervision of a judge, the longstanding principle that 'the public ... has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege, *United States v. Bryan,* 339 U.S. [323] at 331 [70 S.Ct. 724 at 730, 94 L.Ed. 884]; *Blackmer v. United States,* 284 U.S. 421, 438 [52 S.Ct. 252, 255, 76 L.Ed. 375] (1932); 8 J. Wigmore, Evidence § 2192 (McNaughton rev. 1961), is particularly applicable to grand jury proceedings." (Citations and footnote omitted). *Id.* at 688, 92 S.Ct. at 2660.

In the recent case of *In re Sealed Case,* 676 F.2d 793 (D.C.Cir.1982), the Court of Appeals for District of Columbia said, "[n]owhere is the public's claim to each person's evidence stronger than in the context of a valid grand jury subpoena.... Only a very limited number of recognized privileges provide legitimate grounds for refusing to comply with a grand jury subpoena, and each of these is firmly anchored in a specific source—the Constitution, a statute or the common law." *Id.* at 806. The D.C. Circuit went on to say that "[c]ompetent authority must determine that a privilege is necessary in a particular context to protect that which society seeks to protect, and that the benefits of protecting the privileged interest outweigh the benefits of getting at the truth. Because recognition of a privilege generally precludes that balance on a case-by-case basis, court are careful to construe recognized privileges narrowly and to adopt new privileges with extreme caution." *Id.* at 806–07 (footnotes omitted).

This Court finds that we are rapidly approaching the era when greater recognition of the rights of parties in a non-formalized marital relationship must be acknowledged by our judicial system. California courts have recently given a certain degree of recognition to relationships between men and women that sustain themselves without the benefit of clergy. These cases, *Marvin v. Marvin,* 18 Cal.3d 660, 134 Cal.Rptr. 815, 557 P.2d 106 (1976); *Butcher v. Superior Court,* 139 Cal.App.3d 58, 188 Cal.Rptr. 503 (1983); *Norman v. Unemployment Insurance Appeals Board,* 131 Cal.App.3d 946, 182 Cal.Rptr. 708 (1982), are distinguishable from the facts of this case.[1] The cited cases

---

1. In Marvin, the California Supreme Court ruled that upon dissolution of a non-marital relationship, a non-marital partner can assert certain property rights against the other partner. 18 Cal.3d 660, 134 Cal.Rptr. 815, 557 P.2d 106 (1976).

Six years later, in Norman, the California Court of Appeal allowed an unmarried partner—in this case a fiancee—to receive unemployment compensation. 131 Cal.App.3d 946, 182 Cal.Rptr. 708 (1982). The Court of Appeal specifically withheld judgment on what result would have obtained if the partners had not been contemplating marriage. Id. at 956. Justice Feinberg urged the Court to go even further. Noting the enormous increase in the number of cohabiting un-

married couples, Justice Feinberg said "[p]articularly relevant to a polycultural state like California is one scholar's observation that the increased recognition of informal marriage has come about in part because the marriage laws are serving a broader clientele and have adapted to the needs and marriage practices of the poor, of migrant populations and of racial and ethnic minorities, groups previously neglected or ignored by the private law. (Glendon, *Modern Marriage Law and Its Underlying Assumptions: The New Marriage and the New Property* (1980) 13 Family L.Q., pp. 443–444.)" Based on these observations, Justice Feinberg concluded that "[t]he legal order can exist only to the extent that social conduct is oriented to it. Law that is too divergent from social reality

deal with the distribution of property and the creation of rights upon the dissolution of a relationship which was not formalized by a marriage ceremony. In contrast, were this Court to extend the marital privilege to the relationship in the case at bar it would be to further a judicially-created policy predicated on maintaining marital accord.

 This Court takes notice of these recent decisions which extend the rights of parties in non-marital relationships. However, because Ms. X_____ seeks to invoke the marital privilege in the context of the grand jury proceeding—where, as noted above, privileges must be narrowly construed—this Court refuses at this time to allow the growing policy behind promoting marital accord in non-marital settings to outweigh the public's right to evidence in this criminal investigation. Therefore, the Court finds that Ms. X_____ cannot invoke the marital privilege against testifying before the grand jury.

Accordingly, and for good cause appearing, the Court denies Ms. X_____'s motion to quash the grand jury subpoena.

IT IS SO ORDERED.

undermines the respect for and the rule of law." Id. at 958.

Earlier this year, in Butcher v. Superior Court, the California Court of Appeal held that an unmarried cohabitant can state a claim for loss of consortium if the claimant can demonstrate that the relationship is both stable and significant. 139 Cal.App.3d 58, 188 Cal.Rptr. 503 (1983).