UNITED STATES of America

v.

Kent FRANK.

No. 04–20778–CR–JORDAN.

United States District Court,
S.D. Florida,
Miami Division.

May 4, 2007.

Jonathan E. Lopez, U.S. Attorneys, Miami, FL, for United States of America.

**ORDER ON CONSTITUTIONALITY OF 18 U.S.C. § 2423(C)**

JORDAN, District Judge.

A grand jury charged Kent Frank, an American citizen, with violating 18 U.S.C. § 2423(c) on five occasions. According to Counts 1–5 of the indictment, Mr. Frank traveled from the United States to Cambodia from September of 2003 to January of 2004 and engaged in "illicit sexual conduct" in that country with various females under the age of 18. This order addresses Mr. Frank's motion to dismiss Counts 1–5.

Entitled "Engaging in illicit sexual conduct in foreign places," § 2423(c) was enacted by Congress in April of 2003. It provides as follows:

> Any United States citizen or alien admitted for permanent residence who travels in foreign commerce, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

As it pertains to this case, the term "illicit sexual conduct" means "any commercial sex act (as defined in [18 U.S.C. § ] 1591) with a person under 18 years of age." *See* § 2423(f)(2). In turn, § 1591(c)(1) defines "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person." There is a built-in affirmative defense for cases involving a "commercial sex act." Under § 2423(g), a defendant may establish, by a preponderance of the evidence, that he

"reasonably believed that the person with whom [he] engaged in the commercial sex act had attained the age of 18 years."

Mr. Frank argues principally that Congress, in enacting § 2423(c), exceeded its powers under the Foreign Commerce Clause, U.S. Const. Art. I, § 8, cl. 3. He also presents other challenges, including the assertion that § 2423(c) violates international law because it fails to recognize that the age of consent in Cambodia is 15, and the contention that the extra-territorial application of § 2423(c) violates the Due Process Clause of the Fifth Amendment.

In an earlier order, issued prior to trial, I denied Mr. Frank's motion to dismiss Counts 1–5. This order sets out the bases for that ruling. I conclude that, insofar as it criminalizes commercial sex (i.e., prostitution) with minors, § 2423(c) is constitutional under the Necessary and Proper Clause, U.S. Const. Art. VI, § 8, cl. 18,[1] and that all of Mr. Frank's other challenges lack merit.

## I

A statute's constitutionality presents a question of law. *See United States v. Evans,* 476 F.3d 1176, 1178 (11th Cir.2007). In ruling on the motion to dismiss, however, I cannot consider any facts alleged by Mr. Frank. Nor can I decide contested issues of fact. Instead, I am limited to the allegations contained in the indictment. *See United States v. Sharpe,* 438 F.3d 1257, 1263 (11th Cir.2006).

## A

Mr. Frank contends that Congress exceeded its powers under the Foreign Commerce Clause, U.S. Const. Art. I, § 8, cl. 3. Last year, a panel of the Ninth Circuit, over a strong dissent, rejected this argument. *See United States v. Clark,* 435 F.3d 1100, 1116 (9th Cir.2006). I need not decide whether § 2423(c) is a constitutional exercise by Congress of its Foreign Commerce Clause powers. Even if the dissent in *Clark* is correct, *see* 435 F.3d at 1117–21(Ferguson, J., dissenting),[2] Congress had the authority to enact § 2423(c) under the Necessary and Proper Clause to implement a treaty which the Senate had ratified. *See generally* J. High, *The Basis for Jurisdiction Over U.S. Sex Tourists: An Examination of the Case Against Michael Lewis Clark,* 11 U.C. Davis J. of Int'l Law & Pol. 343, 361–62 (Spring 2005); Note, *Ninth Circuit Holds that Congress Can Regulate Sex Crimes Committed by U.S. Citizens Abroad,* 119 Harv. L.Rev. 2612, 1618 (June 2006).

■■■ The Constitution gives the President the authority to enter into treaties, subject to ratification by the Senate. *See* U.S. Const. Art. II, § 2, cl. 2. All treaties made under the authority of the United States become the "supreme Law of the Land[,]" U.S. Const. Art. VI, cl. 2, and Congress has, pursuant to the Necessary and Proper Clause, *see* U.S. Const. Art. I, § 8, cl. 18, the power to enact legislation to implement treaties.

The treaty power does not "extend[ ] so far as to authorize what the [C]onstitution forbids, or a change in the character of the government, or in that of the states, or a cession of any portion of the territory of the latter, without its consent. But, with these exceptions, its is not perceived that there is any limit to the questions which

---

**1.** I express no view on the constitutionality of other aspects of § 2423(c).

**2.** The majority decision in *Clark* has been criticized by some as giving Congress almost unlimited power under the Foreign Commerce Clause. *See, e.g.,* J. Buffington, *Taking the Ball and Running with It: U.S. v. Clark and Congress' Unlimited Powers under the Foreign Commerce Clause,* 75 U. Cinn. L.Rev. 841, 856–62 (Winter 2006).

can be adjusted touching any matter which is properly the subject of negotiation with a foreign country." *Geofroy v. Riggs,* 133 U.S. 258, 267, 10 S.Ct. 295, 33 L.Ed. 642 (1890) (citations omitted).[3] If a "treaty is valid[,] there can be no dispute about the validity of the [implementing] statute under Article I, [§ ] 8, as a necessary and proper means to execute the powers of the government." *Missouri v. Holland,* 252 U.S. 416, 432, 40 S.Ct. 382, 64 L.Ed. 641 (1920). Here is the way the Supreme Court summarized the treaty power just a couple of years ago: "The treaty power does not literally authorize Congress to act legislatively, for it is an Article II power authorizing the President, not Congress, 'to make Treaties.' U.S. Const. Art. II, § 2, cl. 2. But, as Justice Holmes pointed out [in *Holland*], treaties made pursuant to that power can authorize Congress to deal with 'matters' with which otherwise 'Congress could not deal.' " *United States v. Lara,* 541 U.S. 193, 200, 124 S.Ct. 1628, 158 L.Ed.2d 420 (2004) (citation omitted). *See also United States v. Ferreira,* 275 F.3d 1020, 1027–28 (11th Cir.2001) (because "Congress' authority under the Necessary and Proper Clause extends beyond those powers specifically enumerated in Article I, [§ ] 8, [it] may enact laws necessary to effectuate the treaty power, enumerated in Article II of the Constitution") (citation and internal quotation marks omitted).

**B**

In July of 2000, President Clinton signed the *Optional Protocol to the United* Nations Convention on the Rights of the Child on the Sale of Children, Child Prostitution, and Child Pornography (the "Optional Protocol"), S. Treaty Doc. No. 106–37, 39 L.L.M. 1285, 2000 WL 333666017. The Senate ratified the Optional Protocol in 2002,[4] and it entered into force in January of 2003. Cambodia ratified the Optional Protocol in May of 2002.

The Preamble to the Optional Protocol states that the countries involved are "[d]eeply concerned at the widespread and continuing practice of sex tourism, to which children are especially vulnerable, as it directly promotes the sale of children, child prostitution, and child pornography." In relevant part, the Optional Protocol provides as follows:

> Article 1: State parties shall prohibit the sale of children, child prostitution, and child pornography as provided by the present Protocol.

> Article 2(b): Child prostitution means the use of a child in sexual activities for renumeration or any other form of consideration.

> Article 3(1): Each state party shall ensure that, as a minimum, the following acts and activities are fully covered under its criminal or penal law, whether these offenses are committed domestically or transnationally or on an individual or organized basis: ... (1)(b): Offering, obtaining, procuring, or providing a child for child prostitution, as

---

**3.** *Cf. Reid v. Covert,* 354 U.S. 1, 16–17, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957) (plurality opinion) (holding, in part, that United States could not try wives of servicemen in court-martials for capital offenses committed abroad in times of peace, despite agreements with England and Japan, because such trials would violate the guarantees of the Fifth and Sixth Amendments).

**4.** The United States entered into the Optional Protocol with certain reservations, but none of those reservations are relevant here. The reservations can be found in various sources, including *www.ohchr. org/english/countries/ratification/11 c.htm,* the website for the U.N. Office of the High Commissioner for Human Rights.

defined in Article 2; . . . (3) Each state party shall make these offenses punishable by appropriate penalties that take into account their grave nature; (4) Subject to these provisions of its national law, each state party shall take measures, where appropriate, to establish the liability of legal persons for offenses established in paragraph 1 of the present Article.

Article 3(4): Subject to the provisions of its national law, each state party shall take measures, where appropriate, to establish the liability of legal persons for offenses established in paragraph 1 of this Article. Subject to the legal principles of the state party, this liability of legal persons may be criminal, civil, or administrative.

Article 4(2): Each state party may take such measures as may be necessary to establish its jurisdiction over the offenses referred to in Article 3, paragraph 1, in the following cases: (a) when the alleged offender is a national of the state or a person who has habitual residence in its territory. . . .

One of the statutes that Congress enacted to implement the Optional Protocol was § 2423(c), part of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Act of 2003 (the "PROTECT Act"), Pub.L. 108–21, 117 Stat. 650 (2003). The provision that became § 2423(c) was first proposed as part of the Sex Tourism Prohibition Improvement Act of 2002, and the House of Representatives relied at that time on Article I, § 8 of the Constitution as the authority for enactment. *See* H.R.Rep. No. 525 at 5,107th Cong., 2nd Sess., 2002 WL 1376220, *5 (June 24, 2002). The 2002 provision was incorporated verbatim into the PROTECT Act in 2003, but, as the Ninth Circuit noted in *Clark*, 435 F.3d at 1104, the legislative history of the PROTECT Act does not contain any reference to the constitutional authority for enactment of § 2423(c). *See generally* H.R.Rep. No. 108–66 at 51, 108th Cong., 1st Sess., reprinted in 2003 U.S.C.C.A.N. 683, 686 (April 9, 2003).

## C

Mr. Frank does not contend that the Optional Protocol was beyond the treaty power granted to the President by the Constitution. Nor could he. First, nothing in the Optional Protocol—insofar as it relates to commercial sex with minors—is prohibited by the Constitution or the Bill of Rights. Second, child sex tourism is undoubtedly a significant problem and is, by its very nature, a global concern. Not only are American citizens going abroad to have sex with child prostitutes, there is the possibility that foreigners will come to the United States for the same purpose. *See, e.g.,* H.R.Rep. No. 525 at 2, 2002 WL 1376220, at *2 ("According to the National Center for Missing and Exploited Children, child sex tourism is a major component of the worldwide exploitation of children and is increasing. There are more than 100 web sites devoted to promoting teenage commercial sex in Asia alone."); N. Svensson, *Extraterritorial Accountability: An Assessment of the Effectiveness of Child Sex Tourism Laws,* 28 Loy. L.A. Int'l & Comp. L.Rev. 641, 642–44 (2006) (citing statistics, and noting that "child sex tourism is an extremely lucrative industry, sustained by the increasing demands of foreigners from wealthy nations"); D. Edelson, *The Prosecution of Persons Who Sexually Exploit Children in Countries Other than Their Own: A Model for Amending Existing Legislation,* 25 Fordam Int'l L.J. 483, 484–93 (2001) (providing studies and statistics showing that "child sex tourism is a global problem," and summarizing legislative efforts by some countries to punish their own citizens for extra-territorial conduct). President

Clinton therefore could reasonably have believed, as he said in his letter of transmittal to the Senate, that child sex tourism requires an international solution like the one contained in the Optional Protocol, including extra-territorial criminal prosecution by countries of their own citizens for engaging in commercial sex with minors abroad. *See* Letter of Transmittal from President Clinton to the United States Senate, 2000 WL 33366017 (July 13, 2000). As in *Holland,* "a national interest of very nearly the first magnitude is involved," and "can be protected only by national action in concert with that of another power." 252 U.S. at 434, 40 S.Ct. 382.

▮ The next questions are whether, under rational basis review, Congress could enact § 2423(c) under the Necessary and Proper Clause to implement the Optional Protocol and, if so, whether the statute—insofar as commercial sex with minors is concerned—reasonably implements the Optional Protocol. *See, e.g., United States v. Yian,* 905 F.Supp. 160, 163 (S.D.N.Y.1995) (in determining whether legislation is properly enacted to implement a treaty, rational basis review applies). The answer to both questions is yes. First, § 2423(c) bears a rational relationship to the Optional Protocol in general, and to Articles 2(b) and 3(1)(b)—which deal with child prostitution—in particular. The statute is therefore necessary and proper under the framework of *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 421, 4 L.Ed. 579 (1819), and its progeny. *Cf. Ferreira,* 275 F.3d at 1027–28 (holding that Hostage Taking Act, 18 U.S.C. § 1203, was valid under the Necessary and Proper Clause to implement the Hostage Taking Convention entered into by the United States). Second, § 2423(c) reasonably implements the Optional Protocol. Articles 3(4) and 4(2) require that countries take appropriate measures to establish the liability of individuals for offenses such as paying a child for sex. Extra-territorial criminal liability is one of the options allowed by the Optional Protocol, and § 2423(c) has extra-territorial application. *See United States v. Strevell,* 2006 WL 1697529, *3 (11th Cir.2006) (holding that § 2423(c) applies to conduct of American citizens abroad: "Congress realized the potential effects of domestic harm that come with foreign sex trafficking. Congress purposefully passed this statute in order to stop United States citizens from traveling abroad in order to engage in commercial sex act with minors.").

▮ Moreover, defining a minor as a person under the age of 18, *see* § 2423(f)(2), is also congruent with the Optional Protocol. The task of a court is to give specific meaning to a term in a treaty "consistent with the shared expectations of the contracting parties." *El Al Israel Airlines. Ltd. v. Tseng,* 525 U.S. 155, 167, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999) (citation and internal quotation marks omitted). Although the Optional Protocol does not define the words "child" or "children," the Article by Article analysis provided by the United Nations to accompany the Optional Protocol explains that "[d]uring the negotiations the term 'child' was understood to mean anyone under the age of 18[.]" *See* United Nations Article by Article Analysis of Optional Protocol, Summary of Article I, 2000 WL 33366017. This analysis—a form of legislative history—indicates that the shared expectation of the countries involved in drafting and ratifying the Optional Protocol was that those under 18 would be considered "children." *See, e.g., Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 542–46, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991) (reviewing, among other things, treaty's negotiating and drafting history to determine meaning of disputed treaty term); *In re Commissioner's Subpoenas,*

325 F.3d 1287, 1296–1304 (11th Cir.2003) (consulting extraneous sources to figure out meaning of ambiguous term in treaty). To the extent more is needed, a treaty generally is to be construed liberally to effectuate its purpose, *see United States v. Stuart,* 489 U.S. 353, 368, 109 S.Ct. 1183, 103 L.Ed.2d 388 (1989), and defining a "child" as a person below the age of 18 is consistent with the protection of the young and defenseless. *Cf. United States v. Bach,* 400 F.3d 622, 628–29 (8th Cir.2005) (regulating child pornography "by defining a minor as an individual under eighteen is rationally related to the government's legitimate interest in enforcing child pornography laws"). It is also not inconsistent with the common understanding of the words "child" or "children." *See, e.g.,* Black's Law Dictionary 254 (8th ed.2004) (defining "child" as a "person under the age of majority").

## II

Mr. Frank attacks § 2423(c) on other grounds. But, as explained below, all of those challenges fail too.

■ First, Mr. Frank asserts that the exercise of extra-territorial jurisdiction violates precepts of international law. That assertion, however, is foreclosed by binding precedent. Congress has the power to control (and punish) the conduct of American citizens abroad. *See, e.g., Blackmer v. United States,* 284 U.S. 421, 437, 52 S.Ct. 252, 76 L.Ed. 375 (1932); *United States v. Plummer,* 221 F.3d 1298, 1304 (11th Cir. 2000); *United States v. Mitchell,* 553 F.2d 996, 1001 (5th Cir.1977). International law, moreover, generally allows a country to exert extra-territorial jurisdiction over its own citizens, as long as the exercise of such jurisdiction is not unreasonable. *See Plummer,* 221 F.3d at 1307; Restatement (Third) of Foreign Relations §§ 402(2), 403(1)-(2) (1987). Finally, "public international law is controlling only 'where there is no treaty and no controlling executive or legislative act or judicial decision[.]' " *Garcia–Mir v. Meese,* 788 F.2d 1446, 1453 (11th Cir.1986) (quoting *The Paquete Habana,* 175 U.S. 677, 700, 20 S.Ct. 290, 44 L.Ed. 320 (1900)). Here there is a treaty—the Optional Protocol—ratified by both the United States and Cambodia.

■ Second, Mr. Frank argues that § 2423(c) is unconstitutional because it fails to recognize the domestic law of Cambodia, which provides that the age of consent is 15.[5] I disagree that the statute infringes on the sovereignty of Cambodia. As an initial matter, § 2423(c) does not regulate the conduct of Cambodian nationals (or, for that matter, the nationals of

---

**5.** It is not at all clear—at least not to me—that the age of consent for prostitution in Cambodia is 15. The parties have only provided me with selected provisions of Cambodian penal law, and I have not read any provision which expressly sets the age of consent at 15. The provisions I have read, as discussed below, deal instead with "debauchery" offenses.

Article 7 of the Cambodian Law on Suppression of the Kidnapping, Trafficking, and Exploitation of Human Persons ("Law on Suppression") [D.E. 147, Ex. 2] provides that any person who "opens a place for committing a debauchery [sic] or obscene acts" shall be punished by a term of imprisonment ranging from one to five years. Article 8 provides

that any person who "commits debauchery acts [sic] onto a minor person of below 15 years old, even if there is consent from the concerned minor person or if [sic] upon buying such minor from somebody else or the head of the prostitutes," shall be punished by a term of imprisonment ranging from 10 to 20 years.

The term "debauchery" is not defined in the Law on Suppression, and the parties have not provided any evidence as to what it means in Cambodia. Contemporary English dictionaries define "debauchery" as "excessive indulgence in sensual pleasures; immorality; licentiousness." 1 Shorter Oxford English Dictionary 611 (5th ed.2002).

any countries other than the United States). In addition, as noted earlier, Cambodia ratified the Optional Protocol in May of 2002. Thus, Cambodia, notwithstanding its own domestic laws on consent, and because of a concern over the impact of child sex tourism, decided as a nation that it would sign an international agreement requiring countries to enact legislation to forbid commercial sex with those under the age of 18 by their own nationals. If Cambodia does not believe that the Optional Protocol infringes on its sovereignty—and it obviously does not—it will not be offended by laws enacted by the United States to implement the Optional Protocol, which regulate the conduct of American citizens abroad.

■■■■ Third, Mr. Frank contends that § 2423(c), as applied to his conduct in Cambodia, violates the substantive component of the Due Process Clause of the Fifth Amendment. Unfortunately for Mr. Frank, under substantive due process jurisprudence, the applicable standard is whether the legislation is "rationally related to a lawful government purpose." *Plummer,* 221 F.3d at 1309. Here, the prevention of child prostitution (domestically and/or internationally) is certainly a legitimate government goal, and given the international aspects of child sex tourism, the application of § 2423(c) to the conduct of American citizens abroad is rationally related to achievement of that goal.

■■■■ Fourth, Mr. Frank, citing to cases like *United States v. X–Citement Video, Inc.,* 513 U.S. 64, 69–70, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994), says without much explanation that § 2423(c) is constitutionally deficient because it does not require scienter for the sexual act itself. According to Mr. Frank, in order for the statute to survive, it must be interpreted to require that he knowingly engaged in sex. This argument, insofar as it seeks dismissal, is misplaced. Engaging in sex generally,

and commercial sex in particular, is not a passive activity, and there has been no claim in this case by Mr. Frank that he engaged in sex unknowingly or involuntarily. More to the point, § 2423(g) allows for a "reasonable belief" defense when the charge under § 2423(c) involves a commercial sex act. The jury was instructed on this defense at trial [D.E. 231 at 10–11], and understood (from the evidence presented and the arguments of counsel) that one of the critical issues at trial was whether Mr. Frank knew that the females were under the age of 18 when he had sex with them. By allowing a "reasonable belief" defense, Congress made it clear that a defendant's subjective knowledge (or reasonable belief) as to age is a relevant matter for the jury to consider. In short, § 2423(c) is not a strict liability offense, as Mr. Frank suggests.

### III

Mr. Frank's motion to dismiss Counts 1–5, which charge violations of § 2423(c), is denied.