**In the Matter of The Application of CONSUMERS UNION OF UNITED STATES, INC.**

United States District Court
S. D. New York.
Feb. 15, 1961.

Karpatkin & Karpatkin, New York City, for Consumers Union of United States, Inc. Rhoda H. Karpatkin, Marvin Moses Karpatkin, New York City, of counsel.

Howard S. Dorris, Flushing, N. Y., for Radio Shack Corp. David Wolf, Ezekiel Wolf, Wolf & Greenfield, Boston Mass., of counsel.

WEINFELD, District Judge.

This is a motion by Consumers Union of United States, Inc., pursuant to Rule 45(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., to quash a subpoena duces tecum requiring its chief executive officer to produce various documents and reports in connection with a proposed deposition. The subpoena was issued at the instance of the plaintiff in a litigation pending in the District of Massachusetts; [1] neither the Consumers Union nor the executive officer is a party therein.

Consumers Union is a membership, nonprofit corporation which tests various consumer products, the results of which are published in its magazine, "Consumer Reports," having a wide circulation by way of membership subscriptions and newsstand sales. It is from the sale of the publication that the organization derives practically all its income.

The litigation relates to an electrostat tweeter [2] sold by the plaintiff and which received a favorable rating in the December 1958 issue of "Consumer Reports." [3]

The plaintiff charges the defendants with trademark infringement of its

---

1. Consumers Union's principal place of business is in this District.

2. A "tweeter" is that part of a loudspeaker system which transmits notes in the high frequency range.

3. The February 1960 issue contained a reference to a forthcoming article on tweeters prompted by alleged consumer confusion. The June 1960 issue contained an article which covered tests of the then current tweeters of plaintiff, defendants and others.

"Electrostat 3-Tweeter" and unfair competition. In addition to general allegations charging the defendants with infringement of its statutory and common-law rights, the complaint further alleges that the Consumers Union's favorable reference to plaintiff's product resulted in increased sales; that the defendants, with intent to deceive and confuse customers, have misrepresented that the product sold by them is the same one that had been rated favorably by the Consumers Union.

The subpoena served upon the Consumers Union requires production of all letters, correspondence and inter-office memos in its possession which in any way refer to the tweeters sold by the plaintiff and the defendants. Its sweep is broad enough to include: detailed test data, work papers and reports prepared by petitioner's experts, as well as similar data pertaining to other competitors; reports of purchases of the tweeters in controversy made by anonymous shoppers in the employ of Consumers Union, including inter-office memoranda based thereon; and finally, letters from readers and subscribers referring to the electrostat tweeters of the parties and their competitors.

■■ Among other contentions, the Consumers Union makes an extended argument that to uphold the subpoena would interfere with freedom of the press, freedom of association of it and its members, and the right of privacy.

The fact that the petitioner is a non-profit membership organization and desires to preserve the anonymity and confidence of its membership, particularly those who send letters of complaint about various marketed products, including those which Consumers Union has tested, does not exempt it from the duty "which the citizen owes to his government * * to support the administration of justice by attending its courts and giving his testimony whenever he is properly summoned." [4] Undoubtedly the duty so imposed at times involves material sacrifice, even invasion of personal privacy, and is carried out at great inconvenience, but this is part of the price we pay to secure the effective administration of justice.[5] The Court, after considering the arguments advanced, finds no constitutional barrier or statutory privilege which, upon the facts here presented, requires that the subpoena be quashed.[6]

This motion must be considered and passed upon within the Federal Rules of Civil Procedure, particularly Rules 30(b) and 45(b), which furnish the effective means of protection to witnesses and parties against abuse of the discovery process.

■ So considered, the Court is satisfied that the dragnet nature of the subpoena requires that it be limited; if not modified, it would require disclosure to the litigants of extremely valuable test data and other information of competitive advantage to them, not only against each other, but against other companies not involved in this litigation. The plaintiff is not entitled to the tests made of its or the defendants' products, nor reports which reflect the findings and conclusions of the petitioner's experts. These obviously are confidential data based upon independent research and plaintiff has advanced no adequate reason to justify their disclosure. Apart from requiring disclosure of what, in the light of petitioner's relationship to its mem-

4. Blackmer v. United States, 1932, 284 U.S. 421, 438, 52 S.Ct. 252, 255, 76 L.Ed. 375.

5. See Garland v. Torre, 2 Cir., 259 F. 2d 545, 549, certiorari denied 1958, 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231. Cf. Application of Radio Corporation of America. D.C.S.D.N.Y.1952, 13 F.R.D. 167, 172.

6. The petitioner's attempt to distinguish the instant case from Garland v. Torre, 2 Cir., 259 F.2d 545, certiorari denied 1958, 358 U.S. 910, 79 S.Ct. 237, is without substance.

bers and readers, may be considered "business secrets," [7] the plaintiff seeks in effect to obtain the benefit of an expert's work and conclusions free of cost. If plaintiffs deems the relative merits of the products which are the subject matter of the litigation a matter of relevancy in its claim against the defendants, it should engage its own experts to make an independent study and analysis.

 The only item for which there is some justification is that which seeks the production of letters received by Consumers Union from correspondents indicating confusion with respect to plaintiff's and defendants' products. While likelihood of confusion is sufficient to establish plaintiff's claim,[8] (assuming other essential elements are satisfied) obviously instances of actual confusion would strongly bolster it. In this circumstance, if correspondence in the possession of the petitioner would lead to the discovery of such evidence, the plaintiff should not be deprived thereof. However, it would be burdensome and oppressive to compel petitioner to produce all letters of complaint received by it on this subject which in totality, if they exist at all, would be repetitive and cumulative upon a trial. Accordingly, the petitioner will be required to submit five such letters, or such lesser number as it may have received, of persons living within a radius of ten miles of defendants' place of business, or, if petitioner prefers, it may submit only the names and addresses of such persons,[9] since their letters are hearsay as far as the litigants are concerned. This procedure will enable the plaintiff, if so advised, to take their testimony as witnesses and, at the same time, amply protect petitioner against wholesale disclosure of all letters of complaint received by it.[10]

The Court is satisfied that except as permitted herein the plaintiff has not made the showing of good cause necessary to entitle it to the production of the balance of the documents and material.[11]

The motion is granted only to the extent indicated herein.

The motion as to the former employee is granted in its entirety.

7. Restatement, Torts § 757, comment b (1939). See Sandlin v. Johnson, 8 Cir., 1944, 141 F.2d 660.

8. 15 U.S.C.A. § 1114(1) (a). See American Automobile Ass'n v. Spiegel, 2 Cir., 205 F.2d 771, 773, certiorari denied 1953, 346 U.S. 887, 74 S.Ct. 138, 98 L.Ed. 391; George W. Luft Co. v. Zande Cosmetic Co., 2 Cir., 142 F.2d 536, 538, certiorari denied 1944, 323 U.S. 756, 65 S.Ct. 90, 89 L.Ed. 606; G. B. Kent & Sons v. P. Lorillard Co., D.C.S.D.N.Y.1953, 114 F.Supp. 621, 625–626, affirmed mem. 2 Cir., 1954, 210 F.2d 953.

9. Cf. Sagorsky v. Malyon, D.C.S.D.N.Y. 1952, 12 F.R.D. 486.

10. Cf. Schenley Industries, Inc. v. Institutional Products Corp., D.C.S.D.N.Y. 1954, 16 F.R.D. 13, 15; Shawmut, Inc. v. American Viscose Corp., D.C.S.D.N.Y. 1951, 11 F.R.D. 562, 566.

11. Cf. United States v. Five Cases, D.C. D.Conn.1949, 9 F.R.D. 81, affirmed 2 Cir., 179 F.2d 519, certiorari denied 1950, 339 U.S. 963, 70 S.Ct. 997, 94 L. Ed. 1372; 4 Moore, Federal Practice § 34.08 (2d ed. 1950).