UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant.

No. 69 Civ. 200 (DNE).

United States District Court, S. D. New York.

April 17, 1979.

U. S. Dept. of Justice, Antitrust Division, for the United States.

Cravath, Swaine & Moore, New York City, for defendant IBM.

## MEMORANDUM AND ORDER

EDELSTEIN, Chief Judge.

International Business Machines Corporation ["IBM"], defendant in this civil antitrust action, and its employee witness Erich Bloch ["Bloch"], have moved this court for a protective order, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, to safeguard allegedly confidential information contained in IBM documents relating to Bloch which the court ordered Bloch to produce to the plaintiff United States of America ["government"]. *See* Memorandum and Order, March 15, 1979 (ordering production). The government opposes IBM's and Bloch's motion and proposed order and suggests instead a protective order "providing the same protection to IBM that was accorded IBM's competitors and other non-parties by Amended Pretrial Order No. 13." (Plaintiff's Memorandum at 1.) Amended Pretrial Order No. 13 is a protective order governing confidential information, of the type recognized by Fed.R.Civ.P. 26(c)(7), produced by a nonparty to or for either of the parties in this case.

■ IBM deserves adequate protection for its confidential information. Whether such protection is more or less than or the same as that accorded to confidential information produced by nonparties to the government is not to the point. The pertinent question is whether the protection that is accorded is sufficient and appropriate to the circumstances. The court today has entered a protective order designed to achieve this goal.

■ The order proposed by IBM and Bloch is defective in at least two respects. First, it imposes on plaintiff an unwarrant-ed and unnecessary restriction on access to confidential information produced by IBM. Only lead counsel for the government and counsel designated to cross-examine Bloch would have access to confidential information unless for good cause shown the court permits access by other attorneys employed by plaintiff in the trial of this action. In their Reply Memorandum of Law, IBM and Bloch have offered to modify their proposed order to the extent of allowing three full-time government employees, who agreed to certain restrictions on disclosure, to have access to confidential information in addition to the two aforementioned attorneys on plaintiff's staff.

Such a restriction on plaintiff's access to confidential information exceeds what is adequate to safeguard such information from misuse. Under the protective order issued by the court today, emphasis is placed on preventing plaintiff's misuse of rather than limiting its access to confidential information. By requiring each person who is permitted access to confidential information to submit an affidavit stating that he will abide by its terms, the protective order subjects any misuser of IBM's information designated confidential to the sanction power of this court. Moreover, this limitation on use applies to each affiant, whether or not he remains in the same job position as he held when given access, so long as the information remains protected.

■ Second, under the order proposed by IBM and Bloch testimony and documents are to be retained under seal, during deposition or trial testimony, merely by objection of IBM or Bloch to public disclosure. As self-appointed censors, IBM and Bloch have not submitted any of the allegedly confidential documents for court review. However, in their Reply Memorandum of Law at 12, IBM and Bloch state that "if the Court prefers, we will present to the Court . . . all the IBM documents for which we seek protection for *in camera* inspection and rulings . . . ." But they conclude that "such a procedure would unnecessarily burden the Court without substantial benefit either to the parties, the Court or the public . . . ."

It is wholly improper for IBM and Bloch to claim for themselves the role of deciding which testimony and documents will be shielded from public disclosure, most particularly in a case of undoubted significance to the common weal. *See, e.g., In re Halkin,* 26 F.R.Serv.2d 798, 194 U.S.App.D.C. ——, 598 F.2d 176 (D.C.Cir. 1979).[1] The vice of this proposition is self-evident. While the court may have to carry the substantial burden of reviewing documents, it is decidedly the authority of the court, and not that of a witness or a party, to balance the mandate of the Publicity in Taking Evidence Act, 15 U.S.C. § 30 (1976), that all depositions in this case be open to the public as freely as are trials in open court, with the legitimate needs of a witness and a party to protect confidential information of the type recognized by Fed.R.Civ.P. 26(c)(7). Even where a prima facie claim of confidentiality[2] is made, the public's paramount right to be informed of the progress of the case and the nature of the evidence adduced therein weighs heavily on the side of disclosure in law suits governed by the Publicity in Taking Evidence Act. As was recognized in the Report of the House Judiciary Committee on the Publicity in Taking Evidence Act, it is the people of the United States who are the true plaintiffs in any suit brought by the government under the Sherman Antitrust Act, 15 U.S.C. §§ 1–7:

> In reality the people of the country are plaintiffs in the suit, and the taking of the evidence in secret, either by the court or any master representing the court, is not only contrary to the fundamental idea of our jurisprudence, but it would often result in a denial of justice. Everything pertaining to our courts should have the greatest publicity. Secret hearings would surround our courts with a mystery of doubt and eventually bring them into disrepute. If our courts are to retain the confidence and respect of the country generally, their official conduct must be entirely free from any suspicion of star-chamber proceedings.

H.R.Rep.No.1356, 62nd Cong., 3d Sess. 2 (1913). Allowing a witness or a party to designate which documents and testimony are to be retained under seal without court review would draw the shade and close the door against the public. The Publicity in Taking Evidence Act—a remarkable forerunner of recent legislation designed to expose all aspects of government to public scrutiny[3]—would be subverted under such a procedure.

The motion of IBM and Bloch is denied. IBM may, however, seek the following relief under the protective order issued by the court today. Upon production of those documents ordered produced by the court in its Memorandum and Order of March 15, 1979, IBM may designate documents or portions thereof as confidential pursuant to paragraph 2 of the order. Documents or portions thereof designated as confidential shall be accorded the protection provided for in the order pursuant to paragraph 1 (limitation on use), paragraph 3 (limitation on access), paragraph 4 (maintenance of documents in secure segregated facilities) and paragraph 5 (affidavit and notice of access requirements). In addition, upon further deposition of Bloch, IBM may seek the protections against public disclosure of confidential documents and testimony afforded by the proviso to paragraph 6 of the order.

SO ORDERED.

---

1. In *Halkin,* the district court restrained plaintiff from releasing to the press an "indeterminate amount of material of unknown content," produced in discovery proceedings but under claim of confidentiality by defendant. The Court of Appeals disapproved the order, which was entered upon defendants' conclusory allegations of potential injury, with virtually no *in camera* review of the documents at issue, and with insufficient examination of the strong public interest in access to such information.

2. "[A]pplicant will have to demonstrate that disclosure of allegedly confidential information will work a *clearly defined and very serious injury . . . .*" *United States v. International Business Machines Corp.,* 67 F.R.D. 40, 46 (S.D.N.Y.1975).

3. *See, e.g.,* Government in the Sunshine Act, Pub.L. 94–409, 90 Stat. 1241 (1976) (codified in scattered sections of 5 U.S.C.); Freedom of Information Act, as amended, 5 U.S.C. § 552 (1976).