UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant.

No. 69 Civ. 200 (DNE).

United States District Court, S. D. New York.

May 24, 1979.

U. S. Dept. of Justice, Antitrust Division, for plaintiff.

Cravath, Swaine & Moore, New York City, for defendant.

## MEMORANDUM AND ORDER

EDELSTEIN, Chief Judge.

Plaintiff moves the court pursuant to Federal Rule of Civil Procedure 45(d)(1) for an order directing that Arthur G. Anderson, an employee and prospective witness of defendant, produce for inspection and copying certain documents called for in a subpoena duces tecum dated March 26, 1979, that plaintiff caused to be served on Anderson. Defendant and Anderson have made timely objection to the subpoena, and now interpose a number of arguments against enforcement of the subpoena.[1] Although each

---

1. Plaintiff has sought leave to file reply papers and defendant has opposed that application and in the alternative sought leave to file a sur-reply. Plaintiff seeks to supply reasons why it opposes defendant's proposal, in negotiation respecting the instant subpoena, to defer the deposition until the trial testimony of Frank T. Cary is complete. Plaintiff offers this supplementary information to rebut defendant's assertion that "[t]here can be no rational explanation for plaintiff's rejection of that proposal, except a decision to impose those burdens." Defendant's Memorandum at 3. Also, plaintiff seeks to inform the court in what ways it offered to defendant to modify the subpoena to diminish defendant's alleged burden of compliance. Arguably these would constitute replies to new issues raised by defendant. However,

such ground of opposition fails, three are of sufficient import to suggest some comment by the court in granting plaintiff's motion.

 First, defendant notes that its chairman, Frank T. Cary, is scheduled to testify before Anderson; that after Cary testifies it expects to decide to narrow the scope of Anderson's testimony, thus allowing for a diminution in the scope of the subpoena; that plaintiff's refusal to agree to adjourn Anderson's deposition and subpoena compliance to a time shortly after Cary's testimony is complete demonstrates that the purpose of the subpoena is to maximize the burden on defendant.[2] It need hardly be stated that a purpose to harass a witness or a party by abuse of the court's process will not be countenanced, yet such delict must be carefully distinguished from the unavoidable burden that a valid subpoena, which may be necessarily broad, imposes. As stated in *Atlantic Coast Insulating Co. v. United States,* 34 F.R.D. 450, 453 (E.D.N.Y.1964):

> The request for production is broad; it appears, however, to be the breadth of precaution and not that of harassment. The outsider could be precise and could impose a light burden of disclosure if he knew the records as the record keeper may be supposed to know his own records. But the outsider has not that knowledge and so, to avoid a frustrated examination, he weaves as close a net as he can.

So too in the present case the court will not infer an abusive purpose from plaintiff's refusal to adjourn a subpoena duces tecum that, on its face, calls for documents relevant (within the broad ambit of federal discovery, *see* Fed.R.Civ.P. 26(b)) to the pending deposition and trial examination of Anderson. If it is admitted that plaintiff has the right to depose Anderson and to subpoena documents within his custody and control, as it surely does under this court's order of July 28, 1977, it cannot then be said that the unilateral convenience of defendant suffices to invalidate the same subpoena. If an adjournment appears mutually beneficial, the parties are free to enter a stipulation respecting the timing of this and other depositions and document inspection. Absent such an agreement, however, the court will neither construct by its orders a deposition schedule to suit one party's trial schedule, nor consider the allegedly improvident timing of motions alone as a ground to deny enforcement. To do so would be to weigh such imponderables as the potential lessening of the claimed burden of compliance against the disadvantages of delay in trial preparation, guided only by the contradictory averments of counsel. That is a path the court declines to follow.

A second issue of some novelty presented by defendant is a constitutional objection to paragraph eleven of the document schedule of the instant subpoena. That paragraph calls for "[a]ll documents relative to your work, study or experiences at the Center for Study of Democratic Institutions during 1970–1971." Anderson spent 1970–71, on leave of absence from defendant's employ, as a Fellow at the Center, which he describes as "an independent non-profit research organization" to which he was attracted because of "the dialogue it sought among leaders from a wide variety of disci-

---

in this context, the court considers the negotiations between the parties toward a mutually beneficial adjournment or modification of the subpoena a private affair. To hold that the details of such negotiations were relevant to enforcement of the subpoena would propel the court into a realm of uncertainty, as noted in text. Therefore, the answering papers to which a reply is proposed do not "raise new issues which are material to the disposition of the question," nor does the court require "further briefing of an issue raised in those papers." *United States v. International Business Machines Corp.,* 66 F.R.D. 383, 384 (S.D.N.Y.

1975). Leave to file a reply and sur-reply is denied.

**2.** Defendant has not moved this court for a protective order to adjourn the deposition and return date of the subpoena. It did make such a motion with respect to another witness who is also scheduled to testify after Frank T. Cary. That motion was denied by endorsement of this court. *United States v. International Business Machines,* 82 F.R.D. 183 (S.D.N.Y.1979) (order denying motion for protective order staying deposition of Richard B. Hanrahan).

plines about contemporary and potential future world problems and possible solutions to those problems." Affidavit of Arthur G. Anderson, May 3, 1979, at ¶ 3. Anderson contends that the document demand invades his rights of privacy, free speech and association.

■ The constitutional attack here is akin to the argument for a "scholar's privilege" mounted in *In re Popkin*, 460 F.2d 328 (1st Cir. 1972), *cert. denied*, 411 U.S. 909, 93 S.Ct. 1527, 36 L.Ed.2d 199 (1973), and *In re Falk*, 332 F.Supp. 938 (D.Mass.1971). In *Popkin*, the court recognized a free speech interest in maintaining the free flow of information to scholarly researchers from confidential sources. Arguably a subpoena or questions asked before the grand jury that probed the identities of such sources would chill the flow of information. Yet the court refused to invalidate questions put to the witness insofar as they probed only his contacts with other scholars who were not primary sources: there is no first amendment interest in professional fellowship sufficient to override the lawful inquiries of a grand jury. *Falk* reached a similar conclusion by a different path, refusing to quash a grand jury subpoena ad testificandum directed at a professor of international law. The court held that his claim of constitutional scholar's privilege was defeated by the absence of evidence to establish a "real likelihood that petitioner's sources of lawfully transmitted information will be inhibited by his mere appearance before the grand jury." 332 F.Supp. at 941 (footnote omitted). To the extent that Anderson's claim is premised on a purported first amendment scholar's privilege or the principles said to underlie it, it fails for the reasons isolated in *Popkin* and *Falk* : he has not demonstrated that his work at the Center relied on confidential sources, as opposed to mere discussion with fellow students, professionals, and scholars, or that

enforcement of this subpoena is likely to thwart the flow of information upon which scholars and others may depend. In any event, *Popkin* and *Falk* were decided before *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), which rejected a putative journalist's privilege not to give grand jury testimony relevant to a criminal investigation pursuant to subpoena, despite an agreement to maintain the confidentiality of sources. The *Branzburg* opinion, which reaffirmed the duty of every person to give evidence pursuant to lawful process, counsels strongly against recognizing a privilege here that would defeat the plaintiff's subpoena.[3]

■ Anderson also raises privacy and free association claims. Certainly these domains of constitutional concern are interrelated and mutually supportive. The liberty to enter associations with other individuals to promote an ideology, advance ideas or air grievances free from governmental interference is fundamental to our constitutional order. *E. g., Bates v. Little Rock*, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960). And personal autonomy in such areas as family planning, *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and the protection against unreasonable disclosure by the government of personal affairs, *see Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), have evolved as two rather distinct branches of the constitutional right of "privacy" beyond the explicit commands of the third, fourth and fifth amendments. The balancing process of governmental versus private interests exemplified in the above cases operates as well, at both constitutional and nonconstitutional levels, in discovery proceedings. *E. g., Williams v. Thomas Jefferson University*, 343 F.Supp. 1131 (E.D.Pa.1972). However, Anderson and defendant, who cite to no authorities in

---

**3.** One case found to recognize a scholar's privilege, albeit at a sub-constitutional level, is *Richards of Rockford, Inc. v. Pacific Gas & Elec. Co.*, 71 F.R.D. 388 (N.D.Cal.1976). That case, and the Second Circuit journalist privilege case on which it relies, *Baker v. F & F Investment*,

470 F.2d 778 (2d Cir. 1972), both emphasized the discretion of the trial court, and involved third party deponents and clear cases of confidential sources of sensitive information—elements lacking in the present case.

support of their constitutional claims, do not suggest how the subpoena at issue here intrudes on any such rights.[4] No demonstration has been made that the subpoena invades confidential relationships or reasonable and pre-existing expectations of privacy, or that it would bring to light associations necessarily kept anonymous if free expression is to be maintained. Rather, the witness expresses a generalized desire for seclusion and noninterference, a wish that he not be made to expose his affairs to scrutiny. Such claims, sincere and understandable as they may be, must yield to the entitlement of the public to every person's evidence when he or she is properly summoned. *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *Blackmer v. United States,* 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932); 8 Wigmore, *Evidence* § 2192 at 70 (McNaughton rev. 1961). As Judge Weinfeld has written of a subpoena duces tecum issued during pretrial discovery in a civil case, in denying a motion to quash on the grounds of freedom of speech, association and the right of privacy:

> Undoubtedly the duty so imposed at times involves material sacrifice, even invasion of personal privacy, and is carried out at great inconvenience, but this is part of the price we pay to secure the effective administration of justice.

*In re Consumers Union of United States, Inc.,* 27 F.R.D. 251 (S.D.N.Y.1961). *See also Grinnell Corp. v. Hackett,* 20 Fed.R.Serv.2d 668 (D.R.I.1974), *appeal dismissed and petition denied,* 20 Fed.R.Serv.2d 660 (1st Cir. 1975) (right of free association must yield to defendant's discovery demand for identity of plaintiff association's members where relevant to issues in civil litigation); *Dow Chemical Co. v. Taylor,* 20 Fed.R.Serv.2d 673 (E.D.Mich.1974), *appeal dismissed and petition denied,* 20 Fed.R.Serv.2d 665 (6th Cir. 1975) (same).

For the reasons stated above, the court rejects the attack on paragraph 11 of the subpoena.

Finally, defendant and Anderson argue that the subpoena's imposition of an "ongoing obligation" to produce documents is an improper attempt to obtain documents not in existence as of the return date of the subpoena. However, the plain language of Rule 26(e)(3), Federal Rules of Civil Procedure, permits the court to impose a duty to supplement responses. *See Cleo Wrap Corp. v. Elsner Engineering Works, Inc.,* 59 F.R.D. 386 (M.D.Pa.1972); *Rogers v. Tri-State Materials Corp.,* 51 F.R.D. 234 (N.D.W.Va.1970). Responsive documents created after the return date of the subpoena are, therefore, subject to production in accordance with numbered paragraph one below. Factors that have persuaded the court to impose such a duty in this instance are the government's allegation in its Amended Complaint of a "continuing violation" of Section 2 of the Sherman Act, 15 U.S.C. § 2; the nature of this litigation; and the inconclusiveness of the scheduling of Anderson's trial testimony (see numbered paragraph 3 below).

The court has considered and rejects defendant's and Anderson's remaining arguments as either attempts to reargue points the court has already decided or as otherwise meritless. The documents demanded are within the permissible scope of examination, Fed.R.Civ.P. 26(b), 45(d)(1), and the subpoena violates no other rights of Anderson or defendant. Plaintiff's motion is granted.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. Defendant's prospective witness, Arthur G. Anderson, immediately shall make available to the plaintiff for inspection and copying at the premises or facilities of the IBM Corporation, the documents described in plaintiff's deposition subpoena duces tecum of March 26, 1979. The obligation to

---

4. Anderson avers that plaintiff's inquiry is "disturbing" and causes him concern whether he will "consciously or subconsciously modify [his] behavior as a result" of it. Affidavit of Arthur G. Anderson, May 3, 1979, at ¶ 9. Yet such claims, which are easy to make and hard to refute, do not by themselves suffice to bring the witness within the region of special protection sketched out in *Griswold* and its progeny.

produce documents pursuant to this order is an ongoing obligation and shall continue until all the trial testimony of Dr. Anderson is completed.

2. Plaintiff's deposition of Dr. Anderson shall remain open pending receipt of the documents by plaintiff. Within a reasonable time after the production of documents pursuant to this order, defendant will make Dr. Anderson available for the resumption of his deposition. Plaintiff will notify the court in writing of the date, time, and place agreed upon; if no such agreement is reached, either party may ask the court to fix a date, time, or place.

3. In the event that Dr. Anderson's deposition or document production is not completed by the time he is cross-examined at trial, plaintiff shall conduct cross-examination to the extent it can do so without the availability of the documents ordered produced and/or the completion of the deposition. Cross-examination shall then be suspended and the witness excused, subject to recall for additional cross-examination.

SO ORDERED.